**MACMILLAN, INC., a Delaware Corporation, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, a New Jersey Corporation, Defendant.**

**No. 90 Civ. 0438 (RPP).**

United States District Court, S.D. New York.

July 6, 1990.

---

Skadden Arps Slate Meagher & Flom, Boston, Mass. by Richard Breslow, and George Skelly, Macmillan, Inc., New York City by Jan F. Constantine, for plaintiff.

Wilson, Elser Moskowitz, Edelman & Dicker, New York City by James M. Kaplan, and John F. McCarrilk, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This diversity case involves a claim under a Directors' and Officers' Insurance Policy (the "Policy"). Defendant Federal Insurance Company ("Federal") moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss plaintiff Macmillan's complaint for failure to state a claim upon which relief may be granted.

### I. Facts

For purposes of this motion to dismiss, the Court assumes the truth of the allegations in the complaint, which may be summarized as follows. On about October 5, 1987, Federal issued an Officers' and Directors' Insurance Policy to Macmillan. Complaint para. 4. The Policy contains two insuring clauses. First, the Executive Liability clause provides coverage for losses that the insured directors and officers become legally obligated to pay as a result of claims against them in their capacity as directors and officers. Second, the Executive Indemnification clause covers Macmillan for payments for which it "grants indemnification" to the directors and officers, as permitted or required by law. Whereas the Executive Liability clause directly insures Macmillan's directors and officers, the Executive Indemnification clause insures the company for payments made to individual directors and officers only to the extent that they are properly indemnified by Macmillan.

The losses for which Macmillan claims insurance coverage arose as a result of a takeover battle for Macmillan which commenced about May 1988. During this battle lawsuits were brought against Macmillan's officers and directors by Macmillan shareholders and debenture holders. These suits successfully blocked the defensive restructuring of Macmillan by the company's management, *see Robert M. Bass Group, Inc. v. Evans,* 552 A.2d 1227, 1239 (Del.Ch.1988), and enjoined the sale of Macmillan to a management-supported party. *See Mills Acquisition Co. v. Macmillan, Inc.,* 559 A.2d 1261 (Del.Supr.1988).[1] Macmillan was ultimately acquired by affiliates of Robert Maxwell in November 1988. Plaintiff alleges that the insured directors and officers, in defending these actions, incurred payment obligations for legal fees, expenses, costs and other amounts in excess of $13,000,000.

Plaintiff also alleges that it made timely demands of Federal to pay the full amount of the costs incurred by the former officers and directors and to reimburse and indemnify Macmillan for all payments it had "advanced" on behalf of its former officers and directors. Federal refused to make the payments demanded by plaintiff.

Plaintiff's complaint asserts five claims for relief under both of the governing insuring clauses of the Insurance Policy. The complaint alleges breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty and seeks indemnification and declaratory relief. Defendant moves to dismiss on the grounds that (1) Macmillan is not the real party in interest for its claims arising from the Executive Liability clause; (2) Macmil-

---

1. In *Robert M. Bass Group, Inc. v. Evans,* 552 A.2d at 1239 the Delaware Court of Chancery preliminarily enjoining Macmillan's management from implementing a restructuring of the company because the board, who may have been "acting primarily in its own interests," did not establish that it acted in good faith and conducted a reasonable investigation in adopting the restructuring plan. In *Mills Acquisition*

*Co. v. Macmillan, Inc.,* 559 A.2d at 1264, the Delaware Supreme Court, finding "breaches of the duties of loyalty and care by various corporate fiduciaries which tainted the evaluative and deliberative processes of the Macmillan board, thus adversely affecting general stockholder interests," reversed a denial of a preliminary injunction.

lan failed to allege an essential condition precedent to coverage under the Executive Indemnification clause—namely that Macmillan had properly granted indemnification to the former directors and officers; and (3) the controversy lacks ripeness for a declaratory judgment.

## II. Discussion

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In making this determination, the court accepts the plaintiff's pleadings at face value and construes allegations in the complaint in favor of the plaintiff. *Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir.1985), *modified on other grounds*, 793 F.2d 457 (1986).

### A. Claims Under the Executive Indemnification Clause

■ Defendant seeks dismissal of plaintiff's claims under the Executive Indemnification clause on the grounds that the complaint fails to allege that Macmillan granted indemnification to the former directors and officers, as required by the plain language of the Policy. Macmillan concedes that it has not granted indemnification, but argues that indemnification is not a condition precedent to recovery under the policy. Macmillan argues that its *power* to indemnify the former directors and officer entitles the company to recover under the Policy, even if it does not affirmatively *grant* indemnification. This proposition, however, founders upon the plain language of the Policy, the relevant case law and policy considerations.

The language of the Executive Indemnification clause provides, in relevant part, that Federal "shall pay on behalf of the Insured Organization [Macmillan] all Loss for which the Insured Organization grants indemnification to each Insured Person, as permitted or required by law." Clause 1.2, Exec.Liability and Indemnification Policy, Kaplan Affidavit, Exhibit B (emphasis in original). The plain meaning of this lan-

guage is that Macmillan must grant indemnification before Federal has any obligation to pay under that clause of the policy.

Macmillan relies upon *Prime Computer, et al. v. Chubb Corp. and Federal Insurance Co.*, D.Mass, C.A. No. 89–2554–H, 1990 WL 117990 (Jan. 3, 1990), which involved a similar Directors' and Officers' Insurance Policy. There, the court denied Federal's motion to dismiss the claims under the indemnification clause. However, according to the transcript of the oral argument on the motion, the plaintiffs in that case, represented by the same counsel as have appeared for plaintiff here, had in fact granted indemnification. Federal's Reply Brief, Exhibit B, at 8. Thus *Prime v. Federal* is clearly distinguishable. *See also Atlantic Permanent Federal Savings & Loan Association v. American Casualty Co.*, 839 F.2d 212, 215, n. 5 (4th Cir.), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988) (Court refuses to allow recovery under Executive Indemnification clause, despite company's granting of indemnification, because the indemnification procedure followed did not comply with federal banking regulations); *PLM, Inc. v. National Union*, C.A. No. C85–7126–WWS (N.D.Cal. December 2, 1986), *aff'd*, 848 F.2d 1243 (9th Cir.1988).

Finally, as a matter of policy, the recognition of Macmillan's theory of recovery would undermine Section 145 of the General Corporation Law of Delaware, which, since Macmillan is a Delaware corporation, governs the granting of indemnification to corporate directors and officers. The Macmillan By-Laws, in language tracking Section 145(a), states, in relevant part, that:

The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding ... by reason of the fact that he is or was a director, officer or employee of the Corporation, or is or was serving at the request of the Corporation as a director, officer or employee of another corporation ... against expenses (including attorney's fees), judgments, fines and amounts paid in settlement ac-

tually and reasonably incurred by him in connection with such action ... *if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation ....*

Macmillan By–Laws, Art. XI, § 1, Kaplan Affidavit, Exhibit C. Section 145(d) outlines the specific procedure by which a corporation determines the eligibility of directors of officers for indemnification.[2] The determination

> shall be made (1) by the board of directors by a majority vote of a quorum consisting of directors who were not parties to such action, suit or proceeding, or (2) if such quorum is not obtainable, or, even if obtainable a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, or (3) by the stockholders.

8 Del.C. § 145(d).

Were Macmillan able to recover under the Executive Indemnification clause of the Policy without actually granting indemnification to the former officers and directors in accordance with the required procedures, then the governing Delaware law would clearly be circumvented. The corporation would be able to obtain reimbursement from its insurer for expenses without the required corporate determination that the expenses were incurred by the officers and directors in good faith and in a manner not opposed to the best interests of the corporation. The Executive Indemnification clause is clearly intended to protect the insurer from such an open door to mischief.

Because Macmillan has failed to allege compliance with the condition precedent of properly granting indemnification to the insured directors and officers, it has failed to state a claim for relief based upon Federal's breach of the Executive Indemnification clause.

█ Plaintiff also seeks a declaratory judgment under 28 U.S.C.A. §§ 2201, 2202 as to "the respective rights and obligations

of Macmillan and Federal under the Policy and a declaration that Federal is obligated to reimburse and indemnify Macmillan, and its directors and officers, in accordance with the Policy." Compl. para. 27.

█ For the court to have the power to grant declaratory relief, there must exist an "actual controversy" in accordance with the Declaratory Judgment Act, 28 U.S.C.A. sec. 2201. Furthermore, it is well settled that, even where a court has the power to grant declaratory relief as to an actual controversy, the court nevertheless retains discretion to deny such relief. *Zemel v. Rusk*, 381 U.S. 1, 19, 85 S.Ct. 1271, 1282, 14 L.Ed.2d 179 (1965), *rehearing denied*, 382 U.S. 873, 86 S.Ct. 17, 15 L.Ed.2d 114 (1966); *Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d 501, 505 (2d Cir.1971); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d sec. 2759.

Federal argues that a declaratory judgment is not appropriate under these circumstances because of the contingent aspect of plaintiff's claim. *Zaborac v. American Cas. Co.*, 663 F.Supp. 330, 332 (C.D.Ill. 1987). Plaintiff maintains that a declaratory judgment is appropriate despite the existence of contingencies regarding the loss involved. Assuming that the current dispute does in fact constitute an "actual controversy," the Court nonetheless holds that the claim for a declaratory judgment should be dismissed.

As the Second Circuit stated in *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998 (2d Cir.1969), *cert. denied* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1969):

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.

---

**2.** Macmillan must grant indemnification in accordance with § 145(d) because its own By-Laws do not state a procedure that supplants this provision. *See Pepsico, Inc. v. Continental*

*Cas. Co.*, 640 F.Supp. 656, 661 (S.D.N.Y.1986) (when a company indemnifies pursuant to Del.C. §§ 145(a), (b), the procedure of § 145(d) applies).

*Id.* at 1001 (quoting BORCHARD, 2 DECLARATORY JUDGMENTS 299 (1941)).

In this case, declaratory relief would not serve these purposes. Unlike the cases relied upon by plaintiff, where the contingencies were outside the control of the party seeking declaratory relief, here the contingency is under Macmillan's control. In *Maryland Casualty Co. v. Pacific Coal & Oil,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), the Supreme Court held that a declaratory judgment was appropriate where the underlying action against the insured was ongoing and it was uncertain whether the insured would in fact be held liable and have a claim against the insurer. Similarly, in *ACandS, Inc. v. Aetna Casualty & Sur. Co.,* 666 F.2d 819 (3d Cir.1981), declaratory relief was proper even though the issue of underlying liability had not yet been decided. In contrast, the instant case involves a contingency (i.e. Macmillan's proper granting of indemnity to the insured directors and officers) that clearly falls within plaintiff's own control and which plaintiff could resolve at any time to eliminate any "uncertainty, insecurity and controversy."

Moreover, unlike a liability policy, where the insurer's duties arise when a claim against the insured is first asserted, the indemnity clause at issue here creates no duties for Federal until the contingent event occurs. Thus, until Macmillan eliminates the contingency by granting indemnification, the issuance of a declaratory judgment would not serve the purpose of facilitating the defense or settlement of an underlying action.

For these reasons, Macmillan has failed to state a claim under the Executive Indemnification Clause of the Policy.

**B. Claims Under the Executive Liability Clause**

 Plaintiff also argues that it may proceed against Federal under the Executive Liability clause as the subrogee of the insured directors and officers, or in the alternative, as the real party in interest pursuant to Fed.R.Civ.P. 17(a).

**1. Subrogation**

Plaintiff contends that it may sue Federal under the Executive Liability clause as the subrogee of the insured directors and officers and that, although the complaint does not specifically assert a subrogation claim, it alleges the elements of such a claim. The Court disagrees, and holds that Macmillan's complaint fails to allege the elements necessary for a subrogation claim under New York law.

Under New York law, which governs the instant case,

> Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability.

*Gerseta Corp. v. Equitable Trust Co.,* 241 N.Y. 418, 425–426, 150 N.E. 501 (1925); *see also Liberty Mut. Ins. v. Borsari Tank Corp.,* 248 F.2d 277, 289 (2d Cir.1957); *Cohn v. Rothman–Goodman Management Corp.,* 155 A.D.2d 579, 547 N.Y.S.2d 881, 882 (2 Dept.1989).

 Thus, a party may, under New York law, be subrogated to the claim of another only when it pays the other's debt "under compulsion or for the protection of some interest of the party making the payments." Macmillan's complaint fails to make even a conclusory allegation that Macmillan was under any legal compulsion, such as indemnification, to make payments on behalf of the former directors and officers, or that it made such payments to protect an interest of the company's.

Nor can a fair inference to that effect be drawn from the complaint. The complaint's sole relevant allegation is that Macmillan "advanced on behalf of the insured directors and officers of Macmillan substantial portions of the payment obligations they incurred in defending those claims." Compl. para 6. This vague allegation provides no basis for inferring that these "ad-

vances" were made to protect Macmillan's interests. It is quite possible that the advances were authorized by the former officers and directors, when they controlled the company, to protect their own interests rather than Macmillan's, particularly in light of the fact that the Delaware courts found that the former directors and officers breached their fiduciary duties to Macmillan, to the detriment of the company. *See Robert M. Bass Group, Inc. v. Evans*, 552 A.2d at 1243–44 (proposed restructuring was an attempt to entrench current management rather than obtain an economically superior price for the shareholders); *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d at 1272, 1275 (management improperly favored white knight in "auction" of the company in order to retain control of the company, even though white knight's conditions "could hinder maximization of the auction process to the detriment of Macmillan's shareholders.") Indeed, under the circumstances as presented in the complaint, there is no assurance that current Macmillan management will not attempt to recover from the former directors and officers the legal expenses Macmillan "advanced" on their behalf, on the grounds that the former directors and officers acted in opposition to the best interests of Macmillan. Thus, the complaint does not allege sufficiently that Macmillan made the alleged payments under legal compulsion or to protect an interest of the corporation.

As support for its argument that it is subrogated, plaintiff relies on *Atlantic Permanent Fed. Sav. & Loan Assn. v. American Casualty Co.*, 839 F.2d 212 (4th Cir.1988), where the court, interpreting a similar Officers' and Directors' Policy, allowed the company to proceed against the insurer as a subrogee of the company's officers. In that case, the company's Board of Directors had agreed to indemnify the officers, but technical deficiencies in the indemnification under applicable banking regulations prevented the company from recovering under the Executive Indemnification clause of the policy. Unlike that case, here there is no basis for inferring that Macmillan acted in accordance with its by-laws or otherwise formally expressed a desire to protect the company's interest rather than the individuals' interests, when it made "advances" on behalf of its officers and directors. Thus, *Atlantic Permanent* is distinguishable from the present case.

Accordingly, the Court holds that the complaint fails to allege the essential elements of a subrogation claim, and Macmillan may not proceed against Federal as the subrogee of the former directors and officers.

2. Real Party in Interest

■ Plaintiff also argues that it is the real party in interest pursuant to Rule 17(a), which reads, in relevant part:

Every action shall be prosecuted in the name of the real party in interest.... [A] party with whom or in whose name a contract has been made for the benefit of another ... may sue in that persons own name without joining the party for whose benefit the action is brought.

Because the Policy was purchased by Macmillan, and because the Executive Liability clause of that Policy benefits the officers and directors of the company, Macmillan claims that it may bring suit under that clause as the real party in interest. In support, Macmillan cites *Staten Island Rapid Trans. Ry. Co. v. S.T.G. Construction Co.*, 421 F.2d 53 (2d Cir.), *cert. denied*, 398 U.S. 951, 90 S.Ct. 1871, 26 L.Ed.2d 291 (1970), where the court relied on Rule 17(a) to find that the plaintiff was the real party in interest in a suit for damages on breach of a construction contract made for the benefit of the public.

■ "The purpose of the real party in interest rule is 'to protect the defendant against a subsequent action by the party actually entitled to recovery, and to insure generally that the judgment will have its proper effect as res judicata.'" *Motta v. Resource Shipping & Enterprises Co.*, 499 F.Supp 1365, 1367 (S.D.N.Y.1980) (citing Notes of Advisory Committee, Fed.R.Civ.P. 17(a), 1966 Amend.). In other words, Rule 17(a) serves to prevent the defendant from being subject to the threat of double liability.

When read in this light, *Staten Island* is distinguishable from the case at bar. Essential to the holding in that case was the court's finding that the defendants "will almost certainly not be subject to future litigation" on the part of the third party beneficiary to the contract. 421 F.2d at 58 n. 6; *see also Southern National Bank of Houston v. Tri Financial Corp.*, 317 F.Supp. 1173 (S.D.Tex.), *modified and remanded on other grounds*, 458 F.2d 688 (5th Cir.1972) (construing *Staten Island* to hold that "even in the absence of formal ratification, defendant was amply protected from any risk of double liability"). Here, there is a significant risk of double liability since Macmillan has not formally indemnified its former officers and directors, and there is no guaranty that the officers and directors will not also seek to recover under the Policy. Because of this risk, Macmillan is not the real party in interest to sue under the Executive Liability clause.[3]

Rule 17(a) mandates that:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of the real party in interest; and such ratification shall have the same effect as if the action had been commenced in the name of the real party in interest.

Accordingly, the Court grants plaintiff 30 days to remedy the problem of potential double liability under the policy through appropriate procedures, including joinder, substitution, ratification or, of course, indemnification.

### III. Conclusion

For the foregoing reasons, the Court orders that plaintiff's claims be dismissed for failure to state a claim upon which relief may be granted, with leave to plaintiff to file, within 30 days of the entry of this opinion and order, an amended complaint remedying the defects enumerated herein.

So Ordered.

---

**3.** Since plaintiff is not the real party in interest, the Court also will not grant plaintiff declarato-ry relief under the Executive Liability clause of the Policy.