Laura A. **FUSCO, in her capacity as the Appointed Financial Trustee Under § 4049 of the Employee Retirement Income Security Act of 1974 for the Termination of the Retirement Insurance Plan for Hourly Rated Employees of Rome Cable Corporation, Plaintiff,**

v.

**ROME CABLE CORPORATION, Defendant.**

No. 92–CV–1181.

United States District Court, N.D. New York.

Aug. 4, 1994.

---

Hancock & Estabrook, Syracuse, NY (Martha L. Berry, of counsel), for plaintiff.

Jacobs Persinger & Parker, New York City (Albert M. Rizzo, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

### BACKGROUND

For a number of years the defendant Rome Cable Corporation ("Rome Cable") es-

tablished and maintained a Retirement Plan ("the Plan") for its employees. Sometime in 1982 Rome Cable began experiencing severe financial difficulties. Due to continuing financial woes, on approximately July 13, 1987, Rome Cable issued a formal Notice of Intent to Terminate the Plan under the "distress termination" provisions of ERISA, 29 U.S.C. § 1341 (West Supp.1994). Effective September 14, 1987, the Pension Benefit Guaranty Corporation ("PBGC") approved that distress termination subject to certain terms and conditions. After the PBGC approved that termination, Rome Cable transferred the Plan's assets to the PBGC. Those assets are referred to as the "guaranteed benefits" because the PBGC guaranteed that they be paid to Plan participants and beneficiaries; and apparently those benefits have continued to be paid on an ongoing basis.

The guaranteed benefits were insufficient, however, to cover the cost of the benefit commitments to all of the Plan's participants and beneficiaries. After realizing this, on December 9, 1988, the PBGC and Rome Cable entered into a settlement agreement with respect to these so-called "unguaranteed benefits." Affidavit of Rock E. White (Dec. 16, 1993), at ¶¶ 5 and 6, and exh. 1 thereto. Under the terms of that agreement, the PBGC was appointed statutory trustee pursuant to 29 U.S.C. §§ 1342(b) and (c) and § 1348(a). *Id.,* exh. 1 thereto at ¶ 1(b). Also under the terms of that agreement, among other things, Rome Cable transferred its assets to the PBGC. *Id.,* exh. 1 at ¶ 2.

Several years later, effective June 25, 1992, the PBGC appointed plaintiff Laura Fusco as the Financial Trustee of the section 4049 trust.[1] *See* 29 U.S.C. § 1349 (West Supp. 1994).[2] Affidavit of Martha Berry in Support of Plaintiff's Motion for Summary Judgment ("Berry Supporting Affidavit") (Dec. 2, 1993), exh. D thereto. That section allowed a trust to be established by the PBGC in connection with a termination plan, such as that pro-

posed by Rome Cable, for the purpose of distributing liability payments to plan participants and beneficiaries. That statute also specifically provided that the PBGC "shall designate a fiduciary . . . to serve as trustee of the trust for purposes of conducting negotiations and assessing and collecting liability pursuant to section 1362(c) of this title[,]" and that is what the PBGC did when it appointed plaintiff as Financial Trustee in June, 1992. 29 U.S.C. § 1349(b)(1)(A) (West Supp.1994).

Just two and one-half weeks after her appointment as Financial Trustee, plaintiff sent a letter, dated July 13, 1992, advising Rome Cable's Chairman of her appointment. Berry Supporting Affidavit, exh. E thereto. In that letter plaintiff requested that Rome Cable submit to her, within 20 days from the date thereof, a plan for payment to the Trust of the outstanding benefit commitments (i.e. the unguaranteed liability payments). *Id.* Plaintiff closed that letter by writing, "[f]ailure to submit such plan within twenty days will force the Financial Trustee to take action to perfect the interest of the Section 4049 Trust as a judgment creditor of Rome Cable." *Id.*

When Rome Cable failed to submit the requested payment plan, and after the time to do so had passed, on September 11, 1992, plaintiff commenced the present declaratory judgment action against Rome Cable. In her complaint, plaintiff purportedly alleges two separate causes of action. Her first cause of action is specifically designated as one for declaratory judgment, wherein plaintiff is seeking a declaration that Rome Cable is liable to the trust for unguaranteed liability payments in the amount of $649,300.00, plus interest. Complaint at 7, ¶¶ 24–26. Plaintiff titles her second cause of action as one for "nonpayment of unguaranteed benefit commitments." *Id.* at 7. This cause of action contains only two paragraphs (both of which

---

1. Even though the settlement agreement does not expressly provide for the appointment of such a Trustee, it obviously contemplated such an appointment when it acknowledged the possibility that such a Trustee could make a claim against Rome Cable. White Affidavit, exh. 1 thereto at ¶ 9.

2. Although this section since has been repealed, it applied to that proceeding because the termination was effective September 14, 1987, and the parties do not dispute this. *See* 29 U.S.C. § 1349 Historical and Statutory Notes (West Supp. 1994).

are designated paragraph 27); in the first paragraph of this cause of action the preceding twenty-six paragraphs of the complaint are incorporated by reference. In the second paragraph of this cause of action, plaintiff simply alleges that Rome Cable's failure to pay the unguaranteed liability payments violates its ERISA obligations and the terms of the distress termination of the Plan. *Id.* at 7–8.[3]

In March, 1993, Rome Cable filed a motion to dismiss the complaint; it also sought at that time to have plaintiff removed as the Financial Trustee due to a claimed conflict of interest. After hearing oral argument, this court denied Rome Cable's motion without prejudice to renew, noting its concern, *inter alia,* that before the court considered the issue of the propriety of plaintiff Fusco serving as Financial Trustee, perhaps the PBGC, as an agency with expertise in such matters, should more properly be addressing this asserted conflict, at least in the first instance.

In February, 1994, the plaintiff Trustee brought a motion seeking partial summary judgment on the issue of liability only; and it is this motion which is presently before the court, as well as Rome Cable's cross-motion. Plaintiff now seeks a court order "finding and declaring that Rome Cable is liable to the § 4049 Trust for outstanding benefit commitments due and owing eligible participants and beneficiaries of the Retirement Plan." Memorandum in Support of Plaintiff's Summary Judgment Motion on the Issue of Defendant's Liability ("Plaintiff's Supporting Memorandum") at 18. On its cross-motion for summary judgment Rome Cable asserts, as it did in its earlier motion to dismiss, that plaintiff has failed to allege an actual case or controversy. Alternatively, Rome Cable seeks dismissal of the complaint pursuant to Fed.R.Civ.P. 57 and the Declaratory Judgment Act, 22 U.S.C. § 2201.

Since the denial of Rome Cable's original motion in March, 1993, and indeed until April, 1994, little had changed with respect to the PBGC's actions in connection with the section 4049 trust which is the subject of this litigation. In April, 1993, shortly after this court denied Rome Cable's motion to dismiss and for removal of plaintiff as the section 4049 trustee, the PBGC, in response to Rome Cable's November, 1992, request recognized that Rome Cable "ha[d] raised factual issues that may or my not have been addressed at the time of the appointment of Ms. Fusco as the Section 4049 Trustee." Affidavit of Albert M. Rizzo (Dec. 23, 1993), exh. 2 thereto. Despite the fact that Rome Cable's request for the PBGC's reconsideration of plaintiff's appointment as Financial Trustee has been pending for over a year now, the PBGC has yet to take any definitive action in this regard. Therefore, at least for the moment, plaintiff Fusco remains the Financial Trustee. Finally, in April, 1994 the PBGC advised plaintiff's counsel that it had "determined that as of the date of termination of the Plan the outstanding amount of benefit commitments was $847,151[.]"[4] Letter from PBGC to Attorney Berry (April, 1994), Docket Entry # 37.[5] Enclosed with that letter was a memorandum prepared by the PBGC detailing the calculations used to arrive at that amount of outstanding benefit commitments. *See id.*

In the meantime, effective February 4, 1994, Ms. Fusco voluntarily resigned from her position as an attorney with the law firm of Hancock & Estabrook. Affidavit of Martha Berry in Opposition to Defendant's Cross–Motion for Summary Judgment ("Berry Opposition Affidavit") (Feb. 11, 1994) at ¶ 7. In a telephone conference with the court on March 18, 1994, held in connection with these motions, plaintiff's counsel advised the court that even though plaintiff will not be practicing law for the foreseeable future,

---

**3.** The court observes, without deciding, that at least on the face of it, it is questionable whether this second asserted cause of action is, practically speaking, any different from the first.

**4.** Interestingly, this amount, excluding interest calculations, is $197,851.00 less than the amount plaintiff seeks in this action.

**5.** The letter itself does not indicate when it was drafted, although it appears to have a receipt date of April 7, 1994 stamped on it.

she intends to continue serving as financial trustee in the present action.

### *DISCUSSION*

■ Before addressing the substantive aspects of the parties' motions, the court observes that the alternative basis for Rome Cable's motion is procedurally flawed. As previously mentioned, in its Notice of Motion Rome Cable expressly states that it is moving in the alternative for dismissal of the complaint pursuant to Fed.R.Civ.P. 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201. Defendant's Notice of Cross–Motion at 2, ¶ (b). On its face, however, Rule 57 does not provide a basis for making a motion; it just acknowledges the availability of declaratory judgment as a remedy.[6] Nor does section 2201 provide an independent basis for making a motion; it simply creates the remedy of declaratory relief. *Cf. Interport Pilots Agency, Inc. v. Sammis,* 774 F.Supp. 734, 737 (E.D.N.Y.1991), *aff'd on other grounds,* 14 F.3d 133 (2d Cir.1994) (emphasis in original) ("[t]he [Declaratory Judgment] Act itself merely creates a *remedy* of declaratory relief, and does not create or confer federal subject matter jurisdiction over an action that would not normally come within the Court's original jurisdiction.") Thus, Rome Cable improperly relies upon Rule 57 and 28 U.S.C. § 2201 as a basis for alternative relief.

Despite this procedural irregularity, in the interest of justice, the court will construe this alternative motion as also seeking relief under Fed.R.Civ.P. 56. The court will proceed in this manner in part because, as will be seen, Rome Cable combined its response to plaintiff's motion with a request for alternative relief. More specifically, in its memorandum of law Rome Cable raises several arguments in opposition to plaintiff's motion for partial summary judgment, while at the same time, at the close of each of those arguments, it seeks dismissal of the complaint. Plaintiff will not be prejudiced in any

way by the court's handling of Rome Cable's cross-motion in this way, as plaintiff had ample opportunity to and did fully brief all of Rome Cable's arguments in this regard.

With this procedural matter behind it, the court is now free to turn to a discussion of the merits of the parties' respective motions. For her part, the plaintiff argues that Rome Cable is statutorily liable to the section 4049 trust, and thus she is entitled to summary judgment on that liability issue. Rome Cable responds by making a cross-motion for summary judgment asserting that plaintiff has failed to allege an actual case or controversy. Rome Cable further responds that, in any event, plaintiff's motion for partial summary judgment must be denied because declaratory relief is inappropriate under the particular facts of this case. According to Rome Cable, plaintiff's motion also must be denied because there are genuine issues of material fact as to the existence of Rome Cable's liability to the section 4049 trust.

If Rome Cable ultimately prevails on its argument that it is entitled to summary judgment dismissing plaintiff's complaint because there is no actual controversy extant, then obviously there would be no need for the court, indeed it would be unable, to reach plaintiff's motion for summary judgment as to liability. *See Berni v. Intern. Gourmet Restaurants of America,* 838 F.2d 642, 648 (2d Cir.1988) ("In the absence of such controversy [under section 2201], the court lacks jurisdiction to grant such relief."). Consequently, the court must first address the "actual controversy" argument raised in Rome Cable's cross-motion. Only if the requisite controversy is shown to exist here, will the court go on to consider the relative merits of plaintiff's motion for partial summary judgment on the liability issue.

### I. *Rome Cable's Cross–Motion*

#### A. *"Actual Controversy" Requirement*

Section 2201 of the Declaratory Judgment Act states in pertinent part:

> another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar. Fed.R.Civ.P. 57.

**6.** Specifically, Rule 57 states in its entirety:

> The procedure for obtaining a declaratory judgment pursuant to Title 28 U.S.C., § 2201, shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of

In a case of actual controversy within its jurisdiction, ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (West 1994) (emphasis added). Rome Cable contends that the "actual controversy" language of that statute is not satisfied in the present action because there are no allegations in the complaint "as to (a) when the determination of liability was made; (b) if it was made, how the determination was made; and (c) if $649,300 is the amount of liability owed by Rome Cable, what the amount of outstanding benefit commitments is upon which the liability is based." Rome Cable Corporation's Memorandum of Law in Support of its Cross–Motion for Summary Judgment Dismissing the Complaint and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Memorandum") at 7. Plaintiff counters that because Rome Cable has denied liability to the section 4049 trust, a "substantial controversy" does exist between the parties. Memorandum on Behalf of Plaintiff in Opposition to Cross–Motion for Summary Judgment at 8. Before examining these arguments in greater detail, it is necessary to consider both the purpose of the Declaratory Judgment Act and the relevant case law construing it.

■ Congress passed the Declaratory Judgment Act in 1934 ("the Act"), which for the first time empowered federal courts to hear actions for declaratory judgment. *Sturge v. Diversified Transport Corp.*, 772 F.Supp. 183, 185 (S.D.N.Y.1991). As plaintiff correctly notes, that Act has "a broad, remedial purpose and, therefore, should be construed liberally." *Akzona Inc. v. E.I. du Pont de Nemours & Co.*, 662 F.Supp. 603, 615 (D.Del.1987) (citation omitted); *see also Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.*, 590 F.Supp. 187, 192 (S.D.N.Y.1984) (citations omitted). Quoting extensively from Judge Friendly's decision in *United States v. Doherty*, 786 F.2d 491 (2d Cir.1986),

the district court in *Sturge*, set forth the variety of ways in which courts have defined the Act's purpose:

'Essentially, a declaratory relief action brings an issue before the court that otherwise might need to await a coercive action brought by the declaratory relief defendant,' ...; the fundamental purpose of the [Declaratory Judgment Act] is to 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to bring suit, after damage has accrued,' ...; the primary purpose of the [Declaratory Judgment Act] is to have a declaration of rights not already determined, not to determine whether rights already adjudicated were adjudicated properly, ...; the declaratory judgment procedure 'creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it,' ...; the declaratory judgment procedure 'enable[s] a party who is challenged, threatened, or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination of plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability,' ....

772 F.Supp. at 186 (quoting *Doherty*, 786 F.2d at 498–99) (internal citations omitted). The Second Circuit in *Penguin Books USA, Inc. v. Walsh*, 929 F.2d 69 (2d Cir.1991), more succinctly explained that "Congress established the declaratory judgment procedure so that parties who were uncertain of their rights could adjudicate their claims without first engaging in dubious conduct." *Id.* at 72.

■ As is clear from the plain language of section 2201 of the Declaratory Judgment Act, before a court may make a declaration thereunder, a case must present an "actual controversy." *See* 28 U.S.C. § 2201(a) (West 1994). The "actual controversy" requirement

of this Act is the same as the "case and controversy" requirement of article III, § 2 of the United States Constitution. *Gilbert, Segall and Young v. Bank of Montreal*, 785 F.Supp. 453, 458 (S.D.N.Y.1992) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937)). Thus, "the Declaratory Judgment Act 'does not impose a higher threshold for justiciability than the basic article III requirement that federal courts shall only decide cases or controversies.'" *Id.* (quoting *East/West Venture v. Wurmfeld Associates, P.C.*, 722 F.Supp. 1064, 1067 (S.D.N.Y.1989)) (other citation omitted).

■ The Supreme Court has explained that "actual" as that word is employed in section 2201 of the Act "is one of emphasis rather than of definition." *Aetna Life*, 300 U.S. at 240, 57 S.Ct. at 463. "Although it has been extremely difficult to articulate a convenient and precise standard" for determining when an "actual controversy" exists under the Act, the Supreme Court has provided some guidance in this regard. *Id.* The Supreme Court has noted that the question a court must ask is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a 'declaratory judgment.'" *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (1993) (emphasis added by Second Circuit) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)) (other citation omitted). "Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis." *Id.* (quoting *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir.), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2829, 115 L.Ed.2d 998 (1991)); *see also Monroe v. Horwitch*, 820 F.Supp. 682, 685 (D.Conn. 1993) ("'Case and controversy' issues require analysis of the parties' respective positions regarding the conduct in question."). How-

ever, "[a] mere abstract question or hypothetical threat is not a sufficient basis for a declaratory judgment under the Act." *Long Island Lighting Co. v. County of Suffolk, N.Y.*, 604 F.Supp. 759, 762 (S.D.N.Y.1985) (citing *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969)).[7]

■ In this Circuit, it is well settled that "[a] court must entertain a declaratory judgment action if it would be useful in clarifying and settling legal relations in the case, or if it would terminate the uncertainty, insecurity, and controversy that brought about the proceeding." *Albradco, Inc. v. Bevona*, 982 F.2d 82, 87 (2d Cir.1992) (emphasis in original) (citation omitted); *see also Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir.1992) (same) (citation omitted). Obviously, that standard is in the disjunctive; and in *Continental Casualty*, the Second Circuit plainly stated that "[i]f either prong is met, the action must be entertained." 977 F.2d at 737 (emphasis added). Thus, the relevant inquiry in the present case is whether plaintiff has satisfied either of those criteria. If she has, then under *Continental Casualty*, this court must entertain plaintiff's declaratory judgment action and, concomitantly, Rome Cable's cross-motion for summary judgment asserting that the requisite controversy is lacking must be denied.

■ As previously mentioned, Rome Cable's cross-motion is premised upon the argument that the facts as alleged in plaintiff's complaint do not support a finding of an "actual controversy" because the PBGC has not yet determined that Rome Cable is even liable for the unguaranteed benefits. (Apparently the PBGC has now determined the amount of Rome Cable's potential liability for these unguaranteed benefits, as set forth in its April, 1994 letter to plaintiff's counsel; but when Rome Cable filed this motion in late December, 1993, the PBGC had not yet ascertained that amount.) Careful examination of the complaint in this action in light of the two criteria reiterated by the Court in *Continental Casualty* demonstrates, howev-

---

7. *See also, Olin Corp.*, 5 F.3d at 17 ("The controversy must be 'real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'") (quoting *Aetna Life*, 300 U.S. at 241, 57 S.Ct. at 464).

er, that this litigation presents an "actual controversy" and thus Rome Cable's motion for summary judgment on this basis must be denied.[8] First of all, as plaintiff persuasively argues, an actual controversy is created by the fact that in its answer, Rome Cable has expressly denied liability to the section 4049 Trust. Answer at 3, ¶ 16.[9] Additionally, Rome Cable has been recalcitrant by failing to respond to the plaintiff Trustee's request for a payment plan to the Trust of the outstanding unguaranteed benefits. In fact, it is this recalcitrance which, in large part, precipitated this litigation.

Finding of an "actual controversy" is further bolstered by the fact that not only has Rome Cable denied liability, but it has done so in the face of a statutory provision which mandates liability.[10] More specifically, the particular provision of ERISA under which plaintiff is seeking a declaration of liability expressly provides, in relevant part:

> In any case in which a single-employer plan is terminated in a distress termination under section 1341(c) of this title or a termination otherwise instituted by the corporation under section 1342 of this title, any person who is, on the termination date, a contributing sponsor of the plan or a member of such a contributing sponsor's controlled group shall incur liability under

8. The court is fully aware that Rome Cable has styled this cross-motion as one for summary judgment under Fed.R.Civ.P. 56, which, of course, allows the court to consider matters beyond the complaint, see Fed.R.Civ.P. 56(c); yet Rome Cable has carefully limited its analysis of this issue to the allegations contained, or more appropriately not contained, in plaintiff's complaint. Generally, "it is the situation at the time suit was filed that establishes the existence *vel non* of an actual controversy." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed.Cir.1993) (citation omitted); *see also Akzona, supra,* 662 F.Supp. at 610 (citation omitted) (Discussing declaratory judgment jurisdiction, the court stated, "[a]s in all other litigation, the case or controversy must exist as of the date of the filing of the complaint."). Even so, there is case authority supporting the view that on a summary judgment motion a court properly may look to matters beyond the complaint, such as evidence adduced through discovery, to determine the existence of an "actual controversy." *See, e.g., Westinghouse Electric Corp. v. Aqua–Chem, Inc.,* 278 F.Supp. 975, 976–77 (E.D.Pa. 1967) ("[A]pplying the principles governing motions for summary judgment, Aqua–Chem, the moving party, in order to succeed must show a state of uncontradicted facts which would establish that no justiciable controversy exists."); *Japan Gas Lighter Association v. Ronson Corp.,* 257 F.Supp. 219, 237) (D.N.J.1966) (The moving defendant must demonstrate the complete absence of any triable issue, "includ[ing] demonstrating that there is no genuine issue as to whether or not a controversy exists between the parties cognizable under the Federal Declaratory Judgment Act, (even though it is the plaintiffs who will ultimately have to establish such controversy at trial as a prelude to declaratory relief."). Moreover, as just noted, fairly recently the Federal Circuit acknowledged that even though the existence of an actual controversy is ascertained by examining the circumstances at the time the suit was filed, "subsequent events can reinforce the correctness of the conclusion." *BP Chemicals,* 4 F.3d at 980 (citation omitted). Therefore, in the present case, as will be seen, initially the court will confine its inquiry, as did Rome Cable, to whether at the time this action was commenced an "actual controversy" existed. Then, in accordance with *BP Chemicals,* it will look to whether "subsequent events can reinforce the correctness of the conclusion." *See id.*

9. Rome Cable strenuously maintains on this motion that in its answer, "[i]t never denied ... liability,...." Defendant's Memorandum at 9. Close examination of both the complaint and the answer in this case reveals, however, that from the court's reading of it, Rome Cable did explicitly deny liability. Plaintiff alleges at paragraph sixteen of her complaint: "Pursuant to § 4062 of ERISA, Rome Cable, as the contributing sponsor of the Retirement Plan, is liable to the PBGC for the total amount of the unfunded, unguaranteed benefit commitments to all participants and beneficiaries of the Retirement Plan, together with interest at a reasonable rate calculated from the termination date of the Retirement Plan as calculated by the PBGC and in accordance with the PBGC's regulations ("Unguaranteed Liability Payments")." Complaint at 5, ¶ 16. In its answer, Rome Cable unequivocally "[d]enies the allegations contained in paragraph '16.'" Answer at 3, ¶ 16. Frankly, the court is hard pressed to imagine a more affirmative denial of liability than that.

10. The court realizes that it is Rome Cable's position that the assessment and collection of liability on the unguaranteed benefits, if any, is also governed by paragraph nine of the settlement agreement. In the court's opinion, however, there appears to be no escaping the mandatory language of 29 U.S.C. § 1362. Further although the interplay between the settlement agreement and the statute is not self-evident, the court observes, without deciding, that any obligations Rome Cable may have under the terms of that agreement do not, necessarily, seem inconsistent with Rome Cable's statutory liability.

this section. The liability under this section of all such persons shall be joint and several. . . .

29 U.S.C. § 1362(a) (West Supp.1994) (emphasis added). Thus, given that unequivocal language, Rome Cable's denial of liability has created an "actual controversy" between parties having adverse legal interests. Presumably plaintiff is interested in ensuring that the plan beneficiaries and participants receive optimal payment of unguaranteed benefits, whereas Rome Cable, which clearly is a financially strapped business, has an interest in ensuring that it pay the least possible amount in terms of unguaranteed benefits.

Furthermore, because of Rome Cable's refusal to acknowledge its liability under ERISA and begin cooperating with the plaintiff Trustee to assure that the appropriate payments thereunder are made, plaintiff has already been harmed in her ability to carry out her statutorily imposed duties as Financial Trustee. Also, there is certainly some immediacy to this dispute because the longer Rome Cable denies liability and declines to participate in drafting a plan for payment of the outstanding unguaranteed benefits, the longer it will be before the Plan participants and beneficiaries will receive the payment to which they are clearly entitled. This situation is especially egregious where, as here, many of the Plan participants and beneficiaries "are elderly and living on fixed incomes, many well below the poverty level." Berry Supporting Affidavit at 5, ¶ 11. Thus, keeping with the Second Circuit's direction in *Continental Casualty* and its progeny, the court must entertain the present declaratory judgment action because it would at least terminate the uncertainty surrounding whether or not Rome Cable is liable to the section 4049 trust. In addition, presumably such a declaration would have served the useful purpose of forcing Rome Cable to negotiate (assuming that is still an option at this point), with the Trustee and the PBGC as to the amount of unguaranteed benefits which will actually be paid to the Plan participants and beneficiaries.

What is more, contrary to Rome Cable's assertion, the fact that the amount of that liability may be in dispute does not automatically require a finding that there is no "actual controversy" within the meaning of the Declaratory Judgment Act presented by this litigation. For example, in *United States v. Hardage*, 733 F.Supp. 1424 (W.D.Okl.1989), *aff'd*, 982 F.2d 1436 (10th Cir.1992), a case relied upon by the plaintiff, in a CERCLA action the court granted the plaintiff's motion for a declaratory judgment for liability for future response costs, impliedly reasoning that a court may determine liability for future costs not yet incurred, even when it does not know the amount of such costs. *Id.* at 1439. Rome Cable's attempt to distinguish *Hardage* is not persuasive. Rome Cable contends that *Hardage* is inapposite because here, unlike *Hardage*, Rome Cable "has not committed an 'act[,]' " upon which liability can be premised. Rome Cable Corporation's Memorandum of Law in Reply to Plaintiff's Opposition to its Cross–Motion at 4.

Rome Cable is ignoring two important points, however. First, as in *Hardage*, this plaintiff likewise is seeking a declaration of liability only. Plaintiff stressed this point again during the March 18, 1994, telephone conference with the court, reminding that on her motion plaintiff seeks only a determination as to whether or not Rome Cable is liable. Plaintiff candidly admits that she intends to leave the amount of such liability for the PBGC to determine, which now seems to have been done (or at least a first step was taken toward that end). Second, as already discussed, Rome Cable's liability in this particular situation is statutorily mandated, and thus Rome Cable need not commit any further "act," as it apparently believes, before such liability may be imposed. The court understands that it is Rome Cable's position that, through negotiating with the PBGC and the Financial Trustee, be it this plaintiff or another, it may ultimately be able to extinguish this liability. The fact remains, however, that given the statutory mandate, the incident of liability could never be fully extinguished, although perhaps Rome Cable would be able to negotiate so that it is not required to pay any monies with respect to such liability.

Moreover, even if the liability itself were contingent, which seems to be Rome Cable's position, the Second Circuit has gone so far as to recognize that in such a case, jurisdiction over a declaratory judgment will not necessarily be defeated. *Associated Indem. v. Fairchild Industries,* 961 F.2d 32, 35 (2d Cir.1992) (citations omitted). There the Court instructed that "courts should focus on 'the practical likelihood that the contingencies will occur....'" *Id.* (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2757, at 587 (2d ed. 1983)). In the present case, the PBGC's "interim" determination as to the amount of liability in March, 1993,[11] combined with its April, 1994 letter setting forth what appears to be a final calculation of liability,[12] strongly indicates that even if the amount ultimately is reduced through negotiations (as Rome Cable no doubt hopes it will be), that does not detract from the fact that, practically speaking, in all likelihood Rome Cable will at some point be required to pay into the Plan some amount for unguaranteed benefits. Therefore, plaintiff is not seeking an advisory opinion from the court. The facts, as alleged in plaintiff's complaint, assert a very real controversy between these two parties having adverse legal interests; and a finding of an "actual controversy" in this case is consistent with the Act's purpose, as previously detailed.

Finally, the court's conclusion that an actual controversy existed at the time this action was commenced, and has continued to exist until the present time,[13] is strengthened by the PBGC's April, 1994 letter pertaining to the amount of Rome Cable's potential liability for the unguaranteed benefits. *See BP Chemicals, supra,* 4 F.3d at 980. Accordingly, for the reasons set forth above, mindful of the liberal spirit in which the Declaratory Judgment Act must be construed, the court finds that on its cross-motion Rome Cable has not sustained its burden of showing that, as a matter of law, no "actual controversy" exists. *See United States v. Certain Funds on Deposit,* 998 F.2d 129, 131 (2d Cir.1993) (citation omitted) ("The burden is on the party moving for summary judgment to demonstrate the absence of any genuine issue of material fact."); *see also* Fed.R.Civ.P. 56(c).

## II. Plaintiff's Partial Summary Judgment Motion

Having determined that there is no merit to Rome Cable's assertion that the requisite controversy is absent here, the court will now turn to plaintiff's motion for partial summary judgment on the issue of liability. This particular motion is based upon the plaintiff's assertion that, as a matter of law, Rome Cable is liable to the section 4049 trust. In that regard, plaintiff points to 29 U.S.C. § 1362, which fully sets forth the parameters of a contributing sponsor's liability, such as Rome Cable.[14]

11. Berry Supporting Affidavit, exh. G thereto.

12. Docket Entry #37.

13. *See American Civil Liberties Union v. The Florida Bar,* 999 F.2d 1486, 1490 (11th Cir.1993) ("The case or controversy requirement must be met throughout the entirety of the proceedings."); *Stokes v. Village of Wurtsboro,* 818 F.2d 4, 5 (2d Cir.1987) (In a declaratory judgment action the Court recognized that " '[i]t is not enough that there may have been a controversy when the action was commenced if subsequent events have put an end to the controversy.' ") (quoting *Mailer v. Zolotow,* 380 F.Supp. 894, 896–97 (S.D.N.Y.1974)).

14. Section 1362(c) reads in its entirety as follows:

A person described in subsection (a) of this section **shall** be subject to liability under this subsection to the trustee appointed under subsection (b) or (c) of section 1342 of this title. The liability of such person under this subsection **shall** consist of—

(1) the outstanding balance of the accumulated funding deficiencies (within the meaning of section 1082(a)(2) of this title and section 412(a) of Title 26) of the plan (if any) (which, for purposes of this subparagraph, shall include the amount of any increase in such accumulated funding deficiencies of the plan which would result if all pending applications for waivers of the minimum funding standard under section 1083 of this title or section 412(d) of Title 26 and for extensions of the amortization period under section 1084 of this title or section 412(e) of Title 26 with respect to such plan were denied and if no additional contributions (other than those already made by the termination date were made for the plan year in which the termination date occurs or for any previous plan year),

Rome Cable's initial response was to avoid this argument and instead assert that the court should exercise its discretion and dismiss this action because (1) to do otherwise "will do nothing but foster further uncertainty and further litigation[;]"[15] (2) the PBGC is an interested party and this action should not proceed in its absence; (3) "considerations of judicial economy and the avoidance of piecemeal litigation militate toward a refusal to grant declaratory judgment[;]"[16] and (4) if need be, appointment of a different Financial Trustee lies within the PBGC's discretion, and it may decide not to exercise that discretion.

### A. Liability

■ Only after discussing these arguments, which are somewhat peripheral to the issue of whether the court should grant summary judgment in plaintiff's favor declaring Rome Cable liable to the section 4049 trust, did Rome Cable finally address the liability issue. Rome Cable contends "that the issue of liability for Unguaranteed Benefits is so intertwined with the calculation of that liability, that granting summary judgment would be improper." Defendant's Memorandum at 15. The court disagrees. Rome Cable has pointed to nothing to refute plaintiff's argument as to mandatory, statutory liability, aside from the possibility (which, reviewing the entire record, in the court's opinion is remote) that eventually it will be successful in significantly reducing, if not eliminating, this liability through negotiations under the terms of the settlement agreement. This speculation as to the amount of Rome Cable's liability does not, however, raise any factual issues precluding summary judgment as to the existence of liability. The court's analysis does not end at this point, however. As earlier explained, the court will also consider Rome Cable's other arguments made in conjunction with plaintiff's motion for partial summary judgment.

### B. Discretion Under Declaratory Judgment Act

■ As distinguished from non-declaratory judgment actions, in which the federal courts have a "virtually unflagging obligation" to exercise the jurisdiction granted them, *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), "where a court has the power to grant declaratory relief as to an actual controversy, the court nevertheless retains discretion to deny such relief." *MacMillan, Inc. v. Federal Ins. Co.,* 741 F.Supp. 1079, 1083 (S.D.N.Y. 1990) (citing, *inter alia, Zemel v. Rusk,* 381 U.S. 1, 19, 85 S.Ct. 1271, 1282, 14 L.Ed.2d 179 (1965)). In *Texport Oil Co. v. M/V Amolyntos,* 11 F.3d 361 (2d Cir.1993), the Second Circuit fairly recently reiterated that in reviewing the trial court's exercise of discretion in this regard [it] has "the power to reverse the district court[ ] ... when the exercise was an abuse of discretion." *Id.* at 365 (citation omitted). The review of whether the lower court abused its discretion is *de novo,* however. *Id.* at 365–366.

Relying upon this discretionary power, Rome Cable argues that even if the court finds, as it has, that an "actual controversy" exists, nonetheless, in its discretion the court should grant summary judgment in favor of Rome Cable.[17] Again, the primary focus of Rome Cable's argument pertains to the al-

---

(2) the outstanding balance of the amount of waived funding deficiencies of the plan waived before such date under section 1083 of this title or section 412(d) of Title 26 (if any), and (3) the outstanding balance of the amount of decreases in the minimum funding standard allowed before such date under section 1084 of this title or section 412(e) of Title 26 (if any), together with interest (at a reasonable rate) calculated from the termination date in accordance with regulations prescribed by the corporation. The liability under this subsection shall be due and payable to such trustee as of the termination date, in cash or securities acceptable to such trustee.

29 U.S.C. § 1362(c) (West Supp.1994) (emphasis added).

**15.** Defendant's Memorandum at 11.

**16.** *Id.* at 13.

**17.** Although Rome Cable specifically seeks dismissal of the complaint relying upon provisions other than Rule 56, as earlier discussed, because the court is treating these arguments as additional grounds for Rome Cable's summary judgment cross-motion, the court will consider these arguments not only as opposition to plaintiff's motion, but also as a possible basis for Rome Cable's cross-motion.

leged uncertainty as to the amount of liability. The court will not revisit that issue; suffice it to say that Rome Cable is simply unable to convince the court that this claimed uncertainty as to the amount of liability, which given the PBGC's April, 1994 communications certainly does not seem as tentative as Rome Cable would like this court to believe, requires the court to exercise its discretion in favor of granting summary judgment in Rome Cable's favor and dismissing the complaint. Thus, the court declines to exercise its discretion and dismiss the complaint on that basis.

### C. PBGC as "Interested Party"

 Rome Cable next asserts that the court, in its discretion, should dismiss the complaint because the PBGC is an "interested party" whose absence renders declaratory relief improper. Defendant's Memorandum at 11. Plaintiff responds by noting that in making this argument Rome Cable fails to take into account Rule 19's joinder requirements. Plaintiff then goes on to briefly analyze the propriety of joining the PBGC under that Rule, concluding that the PBGC is not a "necessary party" thereunder.

The court will not engage in a Rule 19 analysis, however, since Rome Cable, the party asserting that the PBGC is an "interested party," did not rely upon that particular Rule. Instead, the court will, in accordance with the argument as framed by Rome Cable, limit its inquiry to whether under the rules pertaining to declaratory judgment actions generally, the fact that the PBGC is not a party hereto requires denial of the plaintiff's motion for partial summary judgment. The court concludes that it does not. In *Aetna Cas. & Sur. Co. v. Rasa Management Co., Inc.*, 621 F.Supp. 892 (D.C.Nev.1985), the only case cited by Rome Cable in support of its position, the court in a declaratory judgment action recognized that even if one not a party is deemed to be an "interested party," there must be an actual controversy between that party and the plaintiff. *Id.* at 893 (citations omitted). In fact, in *Aetna* the court eventually determined that an insured's sole incorporator, shareholder and director

was not a necessary party to an insurer's declaratory judgment action.

Because neither of the parties to this litigation addressed this point, the court does not have the benefit of their input. Nonetheless, from the court's cursory review of the matter, there does not appear to be an "actual controversy" between the PBGC and the plaintiff such that section 2201's requirement of the same is met. Lack of an "actual controversy" between the plaintiff and the PBGC is based, in part, upon the fact that the interests of the plaintiff and the PBGC are closely aligned, in that, presumably, they both have an interest in insuring that plan beneficiaries and participants receive the maximum in unguaranteed benefit payments. Therefore, as thoroughly discussed in section I herein, given the seeming lack of an "actual controversy" between the PBGC and plaintiff, this is not a situation where the court should refuse to allow this case to proceed in the absence of the PBGC.

Furthermore, as previously discussed, because plaintiff has satisfied at least one of the criteria of *Coastal Savings,* the court does not appear to have the discretion to refuse to entertain plaintiff's action herein. This case stands in stark contrast to *Robinson v. Commissioner of Jurors, New York Cty.*, 419 F.Supp. 1189 (S.D.N.Y.1976), a case relied upon by Rome Cable, where the court found that "plaintiff ha[d] failed to name any defendants who might be liable in damages if this Court were to find that plaintiff's rights have been violated." *Id.* at 1191 (emphasis added). Based upon that finding, the court in *Robinson* held that declaratory judgment action should not be allowed to proceed. Obviously that is not the situation here; plaintiff has named a defendant, Rome Cable, who certainly has potential liability. Thus, even though the PBGC may have some interest in the outcome of this litigation, its absence does not require the court to exercise its discretion in favor of dismissing the complaint outright.

### D. "Judicial Economy"

 Finally, Rome Cable makes a policy argument that "considerations of judicial economy and the avoidance of piecemeal litigation militate toward a refusal to grant declaratory judgment." Defendant's Memo-

randum at 13. Rome Cable then contends that this action should not be permitted to go forward until the PBGC decides whether plaintiff Fusco should be allowed to continue serving as Financial Trustee. Rome Cable claims that "[i]f her appointment is revoked after judgment is entered, the result is to have wasted precious judicial time and resources." *Id.* at 14. Even if revocation did occur and the PBGC appoints another Financial Trustee, the court sees no obvious impediment to substituting that Trustee for Ms. Fusco in the present action. Thus, although judicial economy might be a factor if Rome Cable had prevailed on any of its other arguments, the court declines to deny plaintiff's motion for partial summary judgment solely on this basis.

To summarize, for the reasons set forth herein, the motion by plaintiff, Laura A. Fusco, in her capacity as the Appointed Financial Trustee Under Section 4049 of the Employee Retirement Income Security Act of 1974 for the Termination of the Retirement Insurance Plan for Hourly Rated Employees of Rome Cable Corporation, for partial summary judgment pursuant to Fed.R.Civ.P. 56 on the issue of defendant Rome Cable Corporation's liability to the section 4049 trust is hereby GRANTED in its entirety. The cross-motion for summary judgment by defendant Rome Cable Corporation is hereby DENIED in its entirety. Accordingly, it is

ORDERED that Rome Cable Corporation be and the same hereby is declared and adjudged liable to the section 4049 trust for the outstanding benefit commitments owed to the participants and beneficiaries of the Retirement Insurance Plan for Hourly Rated Employees of Rome Cable. It is further

ORDERED that the parties are under a continuing obligation to keep the court advised as to the progress of the proceedings before the PBGC and the disposition of any remaining issues relative to this litigation. The parties are to report to the court as to the status of this action within ninety (90) days of the date hereof.

IT IS SO ORDERED.