Nicholas Collwyn STURGE, an Underwriter at Lloyd's London for himself and those other Underwriters at Lloyd's London and certain London Market Insurance Companies subscribing to insurance policy numbered BH906187, and John Crawley, an Underwriter at Lloyd's London for himself and those other Underwriters at Lloyd's London subscribing to insurance policy numbered BJ906188, Plaintiffs,

v.

DIVERSIFIED TRANSPORT CORPORATION, Berman Enterprises, Inc., Ken's Marine and Oil Service, Clean Venture, Inc. and MPC Environmental, Inc., Defendants.

No. 91 Civ. 1520 (PKL).

United States District Court, S.D. New York.

Sept. 4, 1991.

---

Palmer Biezup & Henderson, New York City (Alfred J. Kuffler, Sheridan T. Black, of counsel), for plaintiffs.

Haight, Gardner, Poor & Havens, New York City (James T. Shirley, Steven A. Candito, Jeanne–Marie Downey, of counsel), for defendants Ken's Marine and Oil Service, Clean Venture, Inc. and MPC Environmental, Inc.

## OPINION AND ORDER

LEISURE, District Judge.

This is a declaratory judgment action arising out of events surrounding an oil spill in the waters off Staten Island, New York. Plaintiffs, a group of London underwriters and insurance companies (collectively, the "Underwriters"), filed this action seeking a declaration that they are not liable under insurance policies issued to defendants Diversified Transport Corporation ("Diversified") and Berman Enterprises, Inc. ("Berman"), and that they did not guarantee payment of costs incurred in the cleanup of the spill by defendants Ken's Marine and Oil Service ("Ken's Marine"), Clean Venture, Inc. ("Clean Venture"), and MPC Environmental, Inc. ("MPC").[1]

Defendants Ken's Marine, Clean Venture and MPC (collectively, the "moving defendants"), now move this Court for dismissal of this action as against them, and for an award of costs and attorneys' fees. Plaintiffs oppose the motion and have cross-moved "for an Order to show cause why this Court should not issue an Order enjoining [the moving defendants] from prosecuting their action against plaintiffs in New York Supreme Court, Richmond County, Index No. 808/91." Notice of Cross Motion to Show Cause at 1–2.

## BACKGROUND

The oil spill giving rise to this suit occurred on September 27, 1990, with the sinking of the barge Sarah Frank at the First Marine Shipyard in Staten Island. Oil from the barge was released into the Kill van Kull, creating an emergency situation. The moving defendants were among the oil spill control and cleanup contractors (collectively, the "cleanup contractors") hired the same day to conduct an immediate cleanup of the spill by representatives of Diversified, the owner of the barge, Berman, the operator of the barge, and the shipyard.

As a condition of commencing work, the cleanup contractors demanded a letter of undertaking from the Underwriters, the insurers of the barge, confirming that the insurance policy on the vessel would cover the cleanup costs. Such a letter was pro-

---

**1.** Defendants submit that the correct name of Ken's Marine is "Ken's Marine Service, Inc.," and that that of MPC is "Marine Pollution Control, Inc." For convenience, the Court will refer in the text to the names under which those entities are sued herein, as well as by the abbreviations defined above.

vided on September 28, 1990, through Salvage Association Limited ("Salvage Association"), allegedly an agent for the Underwriters. *See* Notice of Motion, Exhibit A. The letter set forth payment procedures under which bills would be approved on behalf of the Underwriters by Salvage Association and forwarded to London for payment directly to the cleanup contractors.

The cleanup contractors worked on the oil spill through October 12, 1990, submitting invoices that were approved by Salvage Association. On or about October 12, 1990, Salvage Association informed the cleanup contractors that the Underwriters were denying coverage under the insurance policies, as well as any payment obligation to the contractors. The cleanup contractors then ceased work on the spill, other than work provided to the Coast Guard.

Settlement negotiations were entered into between the Underwriters and the cleanup contractors. On or about January 6, 1991, the Underwriters made an offer of settlement, which apparently was accepted by at least one of the cleanup contractors, but was not accepted by the moving defendants.

On February 15, 1991, the moving defendants sent a letter to the Underwriters and others notifying the recipients that if a settlement was not reached on or before March 8, 1991, suit would be filed in New York Supreme Court, Richmond County. *See* Notice of Motion, Exhibit B. The underwriters apparently made no response to this letter, other than the filing of this action on March 4, 1991.

The moving defendants filed their action in state court on March 14, 1991. The claims in the state court action include breach of contract, misrepresentation, and account stated. The cleanup contractors' demand for damages is based on the terms of the letter of undertaking, lost earnings and punitive damages. As of August 9, 1991, the date of the last submissions to this Court, the underwriters had not yet filed an answer or counterclaims in the state action.

Since the filing of the two lawsuits, defendant Berman has filed a petition for reorganization with the United States Bankruptcy Court, and thus both actions are automatically stayed against Berman pursuant to Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a).

The moving defendants now ask the Court to decline to exercise jurisdiction over this declaratory action and to dismiss the action as against them. Plaintiffs oppose the motion and ask the Court to enjoin the pending state action against them.

## DISCUSSION

In 1934, Congress passed the Declaratory Judgment Act, now codified at 28 U.S.C. §§ 2201–2202, which for the first time empowered the federal courts to hear declaratory judgment actions. Section 2201 requires that a "case of actual controversy" exist before a party may bring a declaratory action. "[T]he facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). A declaratory judgment action must have an independent basis for jurisdiction and venue, as 28 U.S.C. § 2201 does not create an independent basis for federal jurisdiction. *See Warner–Jenkinson Co. v. Allied Chemical Corp.*, 567 F.2d 184, 186 (2d Cir.1977). Federal Rule of Civil Procedure 57 makes all declaratory judgment actions subject to the Federal Rules of Civil Procedure.

As the Second Circuit stated recently, "Congress established the declaratory judgment procedure so that parties who were uncertain of their rights could adjudicate their claims without first engaging in dubious conduct." *Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 72 (2d Cir.1991).

In *United States v. Doherty*, 786 F.2d 491 (2d Cir.1986) (Friendly, J.), the Second Circuit explored in some detail the function of a declaratory judgment action:

The purpose of the [Declaratory Judgment Act] has been expressed in a varie-

186

ty of ways: "Essentially, a declaratory relief action brings an issue before the court that.otherwise might need to await a coercive action brought by the declaratory relief defendant," *Mobil Oil Corp. v. Long Beach*, 772 F.2d 534, 539 (9th Cir.1985); the fundamental purpose of the [Declaratory Judgment Act] is to " 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued'," *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963) (quoting *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir.), *cert. denied*, 300 U.S. 680 [57 S.Ct. 673, 81 L.Ed. 884] (1937)); the primary purpose of the [Declaratory Judgment Act] is to have a declaration of rights not already determined, not to determine whether rights already adjudicated were adjudicated properly, *Hurley v. Lindsay*, 207 F.2d 410, 411 (4th Cir. 1953); the declaratory judgment procedure "creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it," Wright, *The Law of Federal Courts* § 100, at 671 (4th ed. 1983); the declaratory judgment procedure "enable[s] a party who is challenged, threatened, or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination of plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability," Borchard, *Declaratory Judgments* 280 (2nd ed. 1941).

*Id.* at 498–99.

■ Even if federal jurisdiction exists and the requirements for a declaratory judgment action are met, it remains within the discretion of the district court to decline to hear a declaratory judgment action. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *Hartford Accident & Indem. Co. v. Hop-On International Corp.*, 568 F.Supp. 1569, 1571–72 (S.D.N.Y.1983). This is particularly the case when there is a proceeding pending in another court, state or federal, that will resolve the controversies between the parties. *See Ven-Fuel, Inc. v. Department of Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (citing *Hollis v. Itawamba County Loans*, 657 F.2d 746, 750 (5th Cir.1981) (pending state action) and *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir.1967), *cert. denied*, 389 U.S. 1039, 88 S.Ct. 776, 19 L.Ed.2d 828 (1968) (pending federal action)). The situation must be distinguished from non-declaratory judgment actions, in which the federal courts have a "virtually unflagging obligation," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), to exercise the jurisdiction given them. *See Hartford Accident, supra*, 568 F.Supp. at 1571–72.

The Second Circuit has explained that a declaratory judgment action should be entertained " 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.1969), *cert. denied*, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970) (quoting E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941)); *see also Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir. 1986). "The Declaratory Judgment Act was not intended to enable a party to obtain a change of tribunal from a state to federal court, and it is not the function of the federal declaratory action merely to anticipate a defense that otherwise could be presented in a state action." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2758 at 631–32 (1983).

In *Great American Insurance Co. v. Houston General Insurance Co.*, 735

F.Supp. 581 (S.D.N.Y.1990), this Court dismissed a declaratory judgment action despite the fact that it had been filed before a parallel coercive action was filed in a state court, finding that the facts of the case demonstrated "a classic example of a race to the courthouse." *Id.* at 586. The Court further held that "the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action." *Id.*

The Second Circuit has also held that "[w]hen the declaratory judgment action has been triggered by a notice [of suit] letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiff's chosen forum." *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

In the instant case, the events leading to the filing of the two actions indicate that the filing of the action before this Court was triggered by the notice of suit given to plaintiffs by the moving defendants. This factor militates in favor of dismissal of this action.

Plaintiffs argue, however, that the issues presented in this action are governed by federal maritime law, and that they should not be deprived of this Court's expertise in that law. The moving defendants counter that the issues are not ones of maritime law, and that in any event, the state court has concurrent jurisdiction over all claims that might be presented before this Court. However, even where issues of maritime law were unquestionably present, a district court may refuse to entertain a declaratory judgment action when a parallel state action is pending. *See Employers Ins. of Wausau v. Gulf Island Marine, Inc.,* 718 F.Supp. 17 (E.D.La.1989).

By order dated July 25, 1991, this Court requested supplemental briefing "on the question of whether all claims and all issues in the action before this Court may be heard in the pending state court action, whether or not every such issue has been raised in the pleadings in that action to date." *Sturge v. Diversified Transport Corp.,* No. 91 Civ. 1520, slip op. at 2 (S.D.N.Y. July 25, 1991). Plaintiffs' supplemental brief, however, focuses primarily on the argument that any claims that might be asserted in the state action could be brought before this Court by way of joinder and counterclaim, and that the issues raised in the instant suit are not currently before the state court. Nowhere do plaintiffs make the argument that their claims could not be fully resolved in the state action.

Plaintiffs argue that because this action may involve interpretation of the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.,* the matter should be heard in federal court. The moving defendants point to Section 1017(c) of the Act, which expressly provides for concurrent state jurisdiction "over claims for removal costs or damages, as defined under this Act." Thus, this factor does not mandate the retention of this action in federal court.

The moving defendants argue persuasively that the underwriters' claims in this action are essentially defenses to the cleanup contractors' claims for payment in the state action. Further, the Court agrees with the moving defendants that plaintiffs' claims may be asserted in state court pursuant to the Saving to Suitors Clause, 28 U.S.C. § 1333(1).

Finally, the Court notes that Justice Peter P. Cusick of the New York Supreme Court has denied the motion of the plaintiffs in this action to dismiss or stay the state action against them, holding that "[n]o decision in the Federal Court action will be dispositive of the instant [state court] action whereas, full and complete resolution of the controversies among the parties can be obtained in the [state court] action." *Marine Pollution Control, Inc. v. Various Underwriters at Lloyd's,* Index No. 808/91, slip op. at 2 (N.Y.Sup.Ct. July 1, 1991). The Court also held that bankruptcy proceedings concerning Berman and another defendant in the state action did not require a stay of that action against the other defendants, but instead severed the

action against the defendants that had filed bankruptcy petitions. *Id.*[2]

While Justice Cusick's decision in the state action does not of course restrain this Court, this Court agrees that the state court is capable of resolving all the issues that might be raised in the action before this Court. It is also not clear, despite plaintiffs' contentions, that all of the controversies among the parties can be resolved in this action for declaratory relief. Plaintiffs give short shrift to possible problems of joinder of parties and claims before this Court, parties and claims that are already present in the state action. Furthermore, it is clear that unless this Court takes the drastic step of enjoining the state action, the parties will be forced to litigate many of the same issues in two fora. Plaintiffs themselves argue that this dispute "should not be settled in a piecemeal manner in various fora." Plaintiffs' Memorandum in Opposition at 7. While this Court agrees, the better solution would seem to be to defer to the pending coercive action in which all claims may be heard.

Upon consideration of all of the factors in this case, it does not appear to this Court that rendering a declaratory judgment in this matter would serve to clarify and settle the legal relations among the parties, nor would it terminate and afford relief from the controversy giving rise to the proceeding.

The instant motion seeks dismissal of the claim against the moving defendants only, which constitutes plaintiffs' second claim for relief. Thus, plaintiffs' first claim for relief against defendants Berman and Diversified remains before the Court. As noted *supra*, this action is stayed against Berman under Section 362(a) of the Bankruptcy Code.

While the Court disagrees with plaintiffs' contention that this entire action must be stayed and has therefore severed and dismissed the claim against the moving defendants, the Court will grant plaintiffs' request for a stay of the remaining claim pending the bankruptcy proceedings. Accordingly, this action will be placed on the Court's suspense calendar until further notice, or until the Court receives notice that the automatic bankruptcy stay is no longer in effect.

Plaintiffs' motion seeking to enjoin the pending state action is denied.

The moving defendants' motion for costs and attorneys' fees is denied.

## CONCLUSION

Plaintiffs' second cause of action against defendants Ken's Marine, Clean Venture and MPC is dismissed without prejudice.

Plaintiffs' motion to enjoin the pending state action is denied.

The moving defendants' motion for costs and attorneys' fees is denied.

This action will be placed on the Court's suspense docket until further notice, or until the Court receives notice that the automatic bankruptcy stay is no longer in effect.

SO ORDERED.

---

2. While Berman's bankruptcy petition may delay the state court in determining issues concerning Berman's insurance contracts with the Underwriters, the effect in this Court will be no different. Thus, Berman's bankruptcy is a neutral factor in the context of the instant motion to dismiss.