**CONSOLIDATED EDISON COMPANY OF NEW YORK, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. 98 CIV. 4155(WK).**

United States District Court, S.D. New York.

Nov. 25, 1998.

Daniel R. Murdock, Lori J. Van Auken, Winston & Strawn, New York, NY, for Plaintiffs.

Sheila M. Gowan, United States Attorney's Office, New York, NY, for Defendants.

## OPINION & ORDER

WHITMAN KNAPP, Senior District Judge.

Before us is defendant's motion, pursuant to Fed.R.Civ.P. 7(b)(1), for an order staying this action, including the government's time to answer or move with respect to the first amended complaint, and for a protective order suspending all discovery, pending final resolution (plus 45 days) of various cases brought by the plaintiffs in the United States Court of Federal Claims. It is alleged that such a stay is warranted in light of the similarity of transactions, facts, and circumstances between the instant action and those brought in the Court of Federal Claims.

### FACTUAL BACKGROUND

The facts set forth below, largely undisputed among the parties, are taken from the plaintiffs' brief in opposition to the government's motion for a stay.

From the mid–1960's through 1992, plaintiffs, twenty-two domestic nuclear utility companies, purchased uranium enrichment services from the government (through the Department of Energy and various predecessor agencies) pursuant to a series of form contracts. The plaintiffs needed enriched uranium in order to operate nuclear power facilities, and for much of the time period here relevant, the government was the only supplier of uranium enrichment services because of the importance of said processes in the national defense. Each contract provided that the prices charged by the government for its services would not exceed a fixed price.

The price the government could charge for its services was also limited by statute—the Atomic Energy Act required the government to set its prices so that it could recover its costs over a reasonable period of time. According to the complaint, one such cost was the price of decontaminating and decommissioning the government's uranium enrichment plants so that no adverse effects would impact the communities where the plants were located.

During the 1980's, the government's share of the uranium enrichment services market fell due to increased competition from foreign suppliers. After unsuccessfully attempting to revise its marketing and pricing schemes, the government turned to Congress for assistance. In 1992, Congress responded by passing the Energy Policy Act ("EPACT") 42 U.S.C. § 2297, et seq.

Through EPACT, the government was authorized to orchestrate a spin-off its uranium enrichment services for ultimate sale to private investors. In order to maximize the value of the services to be sold, Congress did not burden the government with the costs of winding up its enrichment service businesses, but rather created a fund for that purpose. The decontamination and decommission fund ("D & D Fund") would receive moneys from two sources: (1) general appropriations; and (2) a special assessment, to be paid for by the utilities who had purchased enrichment services from the government over the approximately thirty year period in question. The domestic utilities subject to the special assessment are required to pay $150 million per year for a fifteen year period, totaling out to $2.25 billion. Each utility's share is based upon the amount of enrichment services that it purchased from the government during the period ending in 1992.

The plaintiffs have already paid six special assessments, totaling about $560 million. In this action, the plaintiffs contend that the special assessments levied upon them are unjust in light of the fact that the form contracts they entered into with the government already took into account the government's decontamination and decommission costs. The complaint at bar contains seven counts. Six of the counts seek declaratory judgments relating to unconstitutional tak-

ings, due process violations, and breaches of contract. The final count seeks injunctive relief to preclude the government from enforcing the special assessment statutes.

## PROCEDURAL HISTORY

Each of the twenty-two plaintiffs in the instant action has been involved in related actions, either jointly or individually, in the United States Court of Federal Claims ("CFC"). The primary purpose of those actions is to seek monetary damages against the government, which the statute precludes in this forum. The parties vigorously dispute the similarity of the variform CFC actions to the case at bar. According to the plaintiffs, the instant action "is designed to determine the constitutionality of the Special Assessment Statutes, while the CFC Actions are currently intended to preserve the Utilities' rights to recover past payments..." *Plaintiff Utilities' Memorandum of Law in Opposition to the Government's Motion to Stay* at 10. In the government's view, by contrast, all of the CFC actions arise out of the "same series of transactions, facts and circumstances" as the case at bar; as a result, it argues, litigation should not proceed simultaneously in both forums.

Familiarity with several relevant decisions by the CFC and the Federal Circuit will be presumed. These decisions are, in chronological order, *Yankee Atomic Electric Co. v. United States* (Fed.Cir.1997) 112 F.3d 1569, *cert. denied,* (1998) —— U.S. ——, 118 S.Ct. 2365, 141 L.Ed.2d 735; *Barseback Kraft AB v. United States* (Fed.Cir.1997) 121 F.3d 1475; *Centerior Service Co. v. United States* (Ct.Cl. Dec. 17, 1997) Slip. Op. No. 95–103C; and *Florida Power & Light,* 41 Fed.Cl. 477 (Ct.Cl.1996) 96–644C.

Prior to the commencement of the instant action, each of the twenty-two plaintiffs filed separate actions in the United States Court of Federal Claims (the "Individual Actions"). According to the plaintiffs, those actions seek to preserve the utilities' rights to monetary damages. A sample Individual Action complaint, that of plaintiff Consolidated Edison

Company of New York, Inc. ("Con Ed"), can be viewed at Exhibit D to the *Declaration of Sheila M. Gowan* dated August 17, 1998.[1] Con Ed's complaint states that it is an action for both breach of contract and a violation of the Takings Clause. *See* ¶ 1.

## DISCUSSION

### A. The Court of Federal Claims

28 U.S.C. § 1491, commonly known as the Tucker Act, outlines the jurisdiction of the Court of Federal Claims. Subsection (a)(1) of that statute states that "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States..." It is clear from the text of § 1491 that the CFC does have jurisdiction to hear constitutional arguments. What is less clear is the CFC's authority to impose declaratory and injunctive relief. Subsection (b) explicitly delegates declaratory and injunctive authority to the CFC, but only in cases where a disgruntled bidder is objecting to a bidding process—i.e., before a contract with the government has been awarded.

The CFC is a court of limited jurisdiction. *Lyashenko v. United States* (1998) 41 Fed.Cl. 626, 628. The Tucker Act does not create any substantive right enforceable against the United States for money damages; it merely confers CFC jurisdiction whenever the substantive right exists elsewhere. *Id.* In other words, for the CFC to have jurisdiction, the constitutional provision, statute or regulation must mandate compensation from the government by the award of money damages. *Marrero Land & Improvement Association, Ltd. v. United States, et al.* (1992) 26 Cl.Ct. 193, 196. Equitable relief may only be granted if it is collateral to a judgment that is steeped in a money-mandating jurisdictional statute. *Lyashenko,* 41 Fed.Cl. at 629 (citations omitted).

---

1. Con Ed has moved for a stay of that action, as have many other of the Individual Action plaintiffs in their respective cases, so that all the challenges to the validity of the special assessment statutes can be heard here. The government has opposed those stays.

■ The Fifth Amendment, which contains the Takings Clause, does not obligate the government to pay money damages. *Marrero,* 26 Cl.Ct. 193, 196. However, where a claim is otherwise within the CFC's jurisdictional statute, such as one founded on a contract, that claim is not removed from CFC jurisdiction merely because a plaintiff must make a takings argument to prevail. *Id.; see also Alabama Hospital Association v. United States* (Cl.Ct.1981) 228 Ct.Cl. 176, 656 F.2d 606, 609 (while CFC has no jurisdiction over a claim founded solely on Due Process Clause, it is well settled that where a claim is within Tucker Act, that claim is not removed from CFC jurisdiction merely because a plaintiff must make a constitutional argument to prevail).

The Second Circuit, in interpreting jurisdiction of the CFC, has held that if a plaintiff's primary goal is to obtain money damages, the CFC is the *only* proper forum. *See B.K. Instrument, Inc. v. United States* (2d Cir.1983) 715 F.2d 713, 727 ("The courts have firmly established that where the prime objective of the plaintiff is to obtain money from the Government, the jurisdiction of the Court of Claims under § 1491(a)(1) could not be avoided by framing a complaint to appear to seek only injunctive, mandatory or declaratory relief against government officials when the result would be the equivalent of obtaining money damages."); *Dickson v. Pierce* (E.D.N.Y.1988) 1988 WL 26107, *2 (Second Circuit has continuously held to the principle that whenever a claim is based upon an express contract with the federal government, the claim must be heard in the Claims Court and damages are the only relief).

### B. Stays

■ Courts have the inherent power to stay or dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction. *In re Houbigant, Inc.* (S.D.N.Y. 1996) 914 F.Supp. 997, 1003. A stay is as much a refusal to exercise federal jurisdiction as a dismissal. When a district court decides to dismiss or stay, it presumably concludes that the parallel· litigation will be an adequate vehicle for the complete resolution of the issues between the parties. *Herb-*

*stein v. Bruetman* (S.D.N.Y.1990) 743 F.Supp. 184, 190.

In *Kappel v. Comfort* (S.D.N.Y.1996) 914 F.Supp. 1056, Judge Mukasey cited the five factors courts consider in deciding whether to grant a stay:

(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against he prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

914 F.Supp. at 1058. We are to balance the above-cited factors with the central focus of avoiding prejudice. *Id.*

(1) The plaintiffs have a legitimate interest in obtaining injunctive relief, not readily available in the CFC, so that they can escape their continuing obligations to pay the special assessments. They represent that such obligations amount to $85 million each year.

(2) At oral argument the government called our attention to the burden it would face in defending its position on two fronts, namely in the CFC and in the instant forum. We remarked at that time, and reiterate here, that it would be less burdensome for the government to defend a single action involving all of the utilities here than it would be to defend all the Individual Actions in the CFC in piecemeal fashion.

(3) For the same reason, it would promote judicial efficiency to stay the nineteen Individual Actions while all plaintiffs proceed simultaneously in this forum.

Factors (4) and (5) are not directly implicated here.

■ If our central goal is to avoid prejudice, we conclude that the plaintiffs would suffer more prejudice from the imposition of a stay here than would the government were we to refuse to grant the government's motion.

### C. Declaratory judgments

28 U.S.C. § 2201(1) provides, in pertinent part:

In a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

A declaratory judgment should be entertained when the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant its issuance. *Kidder, Peabody & Co. v. Maxus Energy Corp.* (2d Cir.1991) 925 F.2d 556, 562 (quoting *Golden v. Zwickler* (1969) 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113). Such a remedy is appropriate when it will "serve a useful purpose in clarifying and settling the legal relations in issue, and [ ] when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (citation omitted).

Even if federal jurisdiction exists and the requirements for a declaratory judgment are met, it remains within our discretion to decline to hear a declaratory judgment action. *Sturge v. Diversified Transport Corporation* (S.D.N.Y.1991) 772 F.Supp. 183, 186. "This is particularly the case when there is a proceeding pending in another court, state or federal, that will resolve the controversies between the parties." *Id.* The *Sturge* court distinguished this situation from non-declaratory judgment actions, in which the federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Id.* (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236).

While we recognize that we have the power to decline to exercise jurisdiction over the six counts seeking declaratory judgments, in light of our analysis above *vis-a-vis* the *Kappel* factors we elect to assume jurisdiction over those claims.

## CONCLUSION

In the exercise of our discretion, we decline to impose the stay requested by the government for the reasons outlined above.

However, inasmuch as we believe, in accordance with 28 U.S.C. § 1292(b), that this decision "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," we certify this question for interlocutory appeal.

**SO ORDERED.**