234 F.3d 642 (Fed. Cir. 2000)
 CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., NEW YORK POWER AUTHORITY, NIAGARA MOHAWK POWER CORPORATION, ROCHESTER GAS AND ELECTRIC CORPORATION, ARIZONA PUBLIC SERVICE CORPORATION, COMMONWEALTH EDISON COMPANY, DUKE ENERGY CORPORATION, ENTERGY GULF STATES, INC., FLORIDA POWER CORPORATION, FLORIDA POWER AND LIGHT COMPANY, GPU NUCLEAR, INC. (on behalf of Jersey Central Power & Light Company, Metropolitan Edison Company, and Pennsylvania Electric Company), INDIANA MICHIGAN POWER COMPANY, NEBRASKA PUBLIC POWER DISTRICT, PECO ENERGY COMPANY, SOUTHERN CALIFORNIA EDISON COMPANY, SOUTHERN NUCLEAR OPERATING COMPANY, INC., SYSTEM FUELS, INC., TEXAS UTILITIES ELECTRIC COMPANY, VIRGINIA ELECTRIC & POWER COMPANY, WASHINGTON PUBLIC POWER SUPPLY SYSTEM, WISCONSIN PUBLIC SERVICE CORPORATION, and WOLF CREEK NUCLEAR OPERATING CORPORATION (on behalf of Kansas City Power & Light Company, Kansas Electric Power Cooperative, Inc., and Kansas Gas and Electric Company), Plaintiffs-Appellees,
v.
UNITED STATES, DEPARTMENT OF ENERGY, DEPARTMENT OF ENERGY AS SUCCESSOR TO THE UNITED STATES ATOMIC ENERGY COMMISSION, and ENERGY RESEARCH AND DEVELOPMENT ADMINISTRATION, Defendants-Appellants.
 99-1464
 United States Court of Appeals for the Federal Circuit
 DECIDED: December 5, 2000
 
 Appealed from: United States District Court for the Southern District of New York Senior Judge Whitman KnappDaniel R. Murdock, Winston & Strawn, of New York, New York, argued for plaintiffs-appellees.
 Mark W. Pennak, Attorney, Appellate Staff, Civil Division, Department of Justice, of Washington, DC, argued for defendants-appellants. With him on the brief wereDavid W. Ogden, Assistant Attorney General; and Barbara C. Biddle, Attorney.
 Melvin C. Garbow, Arnold & Porter, of Washington, DC, for amicus curiae Sacramento Municipal Utility District. With him on the brief was Howard N. Cayne.
 Before RADER, Circuit Judge, PLAGER, Senior Circuit Judge,* and GAJARSA, Circuit Judge.
 Opinion for the court filed by Circuit Judge RADER. Dissenting opinion filed by Circuit Judge GAJARSA.
 RADER, Circuit Judge.
 
 
 1
 Consolidated Edison Company of New York and twenty-one other nuclear utilities (collectively, Con Ed) sued the United States, the Department of Energy, and the Energy Research and Development Administration (collectively, the Government) in the United States District Court for the Southern District of New York seeking declaratory judgments and injunctive relief. Consolidated Edison Co. v. United States, 45 F. Supp 2d 331 (S.D.N.Y. 1999). Con Ed's suit challenged the constitutionality of the Energy Policy Act of 1992 (EPACT), 42 U.S.C. § 2297(g) (1994), on due process and takings grounds. The district court denied the Government's motion to transfer the case to the United States Court of Federal Claims, or alternatively to dismiss. Because the district court correctly denied the Government's motion, this court affirms.
 
 I.
 
 2
 Con Ed sued the Government, challenging the constitutionality of EPACT. Before enactment of EPACT, Con Ed contracted with the Government for uranium enrichment services under a series of fixed-price agreements. After enactment of EPACT in 1992, the Government began decontaminating and decommissioning several of its uranium processing facilities. EPACT stipulated that the Government would pay sixty-eight percent of the decontamination and decommissioning costs and that annual assessments on domestic nuclear utilities would supply the remaining thirty-two percent. EPACT made the Department of Energy responsible for computing each utility's share of the assessment in proportion to that utility's use of Government enrichment services in the past. See 42 U.S.C. § 2297g-1(c).
 
 
 3
 After making initial payments under EPACT, Con Ed, and other nuclear utilities not parties to this suit, sued the Government in the Court of Federal Claims seeking refunds of those payments. The Court of Federal Claims lawsuits asserted many of the same constitutional grounds as this lawsuit. In one such case, this court reversed the Court of Federal Claims' grant of summary judgment in favor of a nuclear utility, concluding that collection of the assessments under EPACT was not unconstitutional as applied. Yankee Atomic Elec. Co. v. United States, 112 F.3d 1569, 1571 (Fed. Cir. 1997), cert. denied, 118 S. Ct. 2365 (1998).
 
 
 4
 After several subsequent nuclear utility losses in the Court of Federal Claims, Con Ed filed this suit in the district court. Instead of seeking refunds of assessments paid, however, Con Ed sought declaratory judgment that EPACT is unconstitutional on several grounds and an injunction on enforcement of the EPACT assessments. By taking this procedural posture, Con Ed sought a hearing in another forum. To achieve this objective, Con Ed carefully drew its complaint to avoid prayers for relief actionable in the Court of Federal Claims, such as claims against the United States for money damages. See 5 U.S.C. § 702 (1994).
 
 
 5
 The Government moved the district court to transfer this case to the Court of Federal Claims, where other nuclear utility cases await disposition. The district court denied that motion. The district court noted that the United States Court of Appeals for the Second Circuit and the United States Supreme Court have confirmed that the Administrative Procedure Act (APA) waives the sovereign immunity of the United States for suits that properly invoke equitable relief from agency action. Bowen v. Mass., 487 U.S. 879, 904 (1988); In re Chateaugay Corp., 53 F.3d 478, 493 (2d Cir. 1995). After denying the Government's motion, the district court certified the jurisdictional question for interlocutory review.
 
 II.
 
 6
 The sole question in this case is whether the APA waives sovereign immunity for an action in a district court on the merits of Con Ed's claim because its complaint seeks equitable relief outside the Court of Federal Claims' statutory grant of authority. This court reviews legal questions, such as jurisdiction and authority of the Court of Federal Claims and the district court, without deference. Terran v. Sec'y of Health & Human Servs., 195 F.3d 1302, 1309 (Fed. Cir. 1999).
 
 
 7
 The Government contends that Con Ed's suit in the district court under the APA amounts to impermissible forum shopping. The APA, according to the Government, does not waive sovereign immunity for this suit in the district court because Con Ed can obtain full legal relief, if successful, in the Court of Federal Claims. Specifically, the Government notes that the Court of Federal Claims has, on occasion, asserted power under the Tucker Act to order a full refund of illegally exacted funds. See 28 U.S.C. § 1491(a)(1) (1994); New York Life Ins. Co. v. United States, 118 F.3d 1553, 1554 (Fed. Cir. 1997). Thus, if Con Ed can show illegal exaction of EPACT assessments, the Government maintains, the Court of Federal Claims may have authority to order a refund. Indeed, the Government explains that such suits are already pending in the Court of Federal Claims.
 
 
 8
 Predicting and attempting to preempt Con Ed's response, the Government discounts the Court of Federal Claim's lack of power to order injunctive or other prospective relief. If the EPACT assessments in fact violate constitutional guarantees, the Government asserts, injunctive relief would not be necessary. Rather, res judicata would implicitly bar the Government from assessing Con Ed under EPACT in the future in the face of a Court of Federal Claims illegal exaction judgment. Alternatively, the Government makes a "trust me" argument, explaining that it "would not be so unwise as to require" Con Ed to assert res judicata by making future assessments after a loss in the Court of Federal Claims.
 
 
 9
 This district court case does warrant the Government's "forum shopping" characterization. However, while forum shopping is generally disfavored, see Hanna v. Plumer, 380 U.S. 460, 468 (1965), jurisdictional anomalies may permit forum shopping,see In re Air Crash Disaster Near New Orleans, La., 821 F.2d 1147, 1157 (5th Cir. 1987) (vacated on other grounds) ("After all, the purpose of diversity jurisdiction is toallow a certain kind of forum-shopping."). This case presents such an instance, where the federal code tolerates a variety of forum shopping. Although the operative facts of Con Ed's case in the Court of Federal Claims are nearly the same as in its case in the district court, the Supreme Court has explained that a litigant may invoke the APA as a waiver of sovereign immunity for prospective equitable relief because such relief is not within the jurisdiction of the Court of Federal Claims. Bowen, 487 U.S. at 904. Thus, depending on the relief sought - a refund of illegal exactions under the Tucker Act or an injunction under the APA - jurisdiction may lie either in the Court of Federal Claims, seeTransohio Sav. Bank v. Director, OTS, 967 F.2d 598, 606 (D.C. Cir. 1992), or in the district courts, see Bowen, 487 U.S. at 904.
 
 III.
 
 10
 The APA waives sovereign immunity for actions challenging agency actions in district court. Section 702 provides:
 
 
 11
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. . . . Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.
 
 
 12
 5 U.S.C. § 702. In Bowen, the Supreme Court explains that section 702 "eliminat[es] the defense of sovereign immunity in cases covered by [§ 702]." Bowen, 487 U.S. at 892. The Court further notes: "It is common ground that if review is proper under the APA, the District Court had jurisdiction under 28 U.S.C. § 1331 [the federal question statute]." Id. at 892 n.16. Indeed, in this case, Con Ed properly cites 28 U.S.C. §§ 1331 (federal question statute), 1361 (the mandamus statute), and 2201-02 (1994) (the declaratory judgment statute) to show subject matter jurisdiction for its claim for equitable relief.
 
 
 13
 Thus, the question in this case narrows to whether § 702 of the APA waives sovereign immunity for a suit in a district court for the relief requested. Stated in other terms, does the APA waive immunity for the relief sought by Con Ed in this case? Relevant to that question, section 702 of the APA does not waive sovereign immunity for money damages claims or for claims that seek remedies "expressly or impliedly" precluded by other statutes. 5 U.S.C. § 702; Transohio, 967 F.2d at 607. Section 704 of the APA further excludes from the APA's sovereign immunity waiver those claims for which adequate remedies are elsewhere available. 5 U.S.C. § 704 (1994); Transohio, 967 F.2d at 607. Section 704 states:
 
 
 14
 Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.
 
 
 15
 5 U.S.C. § 704. Read together, sections 702 and 704 limit the APA's waiver of sovereign immunity. In sum, the APA authorizes suits against the Government, other than for money damages, to redress final agency actions not otherwise addressable under federal statutes. Bowen, 487 U.S. at 903 ("When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies.").
 
 
 16
 The Supreme Court's Bowen decision exemplifies the operation of these APA provisions in a setting similar to this case. In Bowen, the Commonwealth of Massachusetts sought review of a final order of the Secretary of Health and Human Services refusing to reimburse a category of Medicaid expenses. Bowen, 487 U.S. at 882. The Supreme Court gave two reasons why § 702's exclusion for money damages claims did not foreclose judicial review: First, Massachusetts' complaints "sought declaratory and injunctive relief . . . not . . . money damages." Id. at 893. Second, "[n]either a disallowance decision, nor the reversal of a disallowance decision, is properly characterized as an award of 'damages.'" Id. Thus, in Bowen, Massachusetts did not seek relief in the form of monetary damages, which would have placed its claim outside the terms of the waiver in § 702.
 
 
 17
 In this case, Con Ed, like the Commonwealth of Massachusetts in Bowen, seeks declaratory and prospective injunctive relief from allegedly unconstitutional EPACT assessments, not money damages. This prayer for relief satisfies the first issue in theBowen reasoning because Con Ed does not seek the recovery of funds at all, but only an injunction on future EPACT assessments. Likewise, Con Ed's suit also falls withinBowen's second reason for evading the money damages obstacle to an APA waiver because Con Ed's prayer for an injunction on future EPACT assessments cannot be properly characterized as a request for an award of damages. Even assuming that Con Ed sought return of its paid assessments in the district court, its claims would not register as "money damages." In the words of the Supreme Court:
 
 
 18
 Our cases have long recognized the distinction between an action at law for damages - which are intended to provide a victim with monetary compensation for an injury to his person, property or reputation - and an equitable action for specific relief - which may include . . . "the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions."
 
 
 19
 Bowen, 487 U.S. at 893 (italics in original). Thus Con Ed's prayer for relief might even hypothetically have sought return of money without falling within the excluded category of "money damages." However, Con Ed does not seek money at all. Con Ed's prayer for specific relief from the EPACT assessments in this case does not fall within the Supreme Court's definition of money damages.
 
 
 20
 Having evaded the money damages exclusion within § 702, Con Ed still must show that § 704 does not withdraw the waiver of sovereign immunity granted by § 702. Section 704 codifies a requirement ensuring that the general grant of review in the APA does not "duplicate existing procedures for review of agency action." Bowen, 487 U.S. at 903. In effect, § 704 withdraws the limited waiver of immunity in § 702 if an adequate judicial remedy is already available elsewhere. 5 U.S.C. § 704. In this case, this court must examine whether the Court of Federal Claims supplies an "adequate remedy" to prevent the constitutional wrongs alleged by Con Ed. If the Court of Federal Claims supplies an "adequate remedy," then Con Ed's cause of action would fall within an exception to the APA's waiver of sovereign immunity.
 
 
 21
 The Supreme Court confronted this issue in Bowen. The Court determined that the Court of Federal Claims cannot supply an "adequate remedy" in a case seeking injunctive relief:
 
 
 22
 The [Government] argues that § 704 should be construed to bar review of the agency action in the District Court because monetary relief against the United States is available in the Claims Court under the Tucker Act. This restrictive - and unprecedented - interpretation of § 704 should be rejected because the remedy available to the [plaintiff] in the Claims Court is plainly not the kind of "special and adequate review procedure" that will oust a district court of its normal jurisdiction under the APA.
 
 
 23
 Bowen, 487 U.S. at 904. For the reasons stated in Bowen, the Court of Federal Claims cannot supply an adequate remedy for Con Ed's suit either. As this passage fromBowen indicates, district court action under the APA is the normal default rule, negated only by special and adequate alternative review procedures. More to the point, however, Con Ed seeks prospective injunctive relief. Indeed, the Supreme Court - noting that the Bowen plaintiff might have chosen to bring suit in the Court of Federal Claims - explained:
 
 
 24
 The Claims Court does not have the general equitable powers of a district court to grant prospective relief. . . . We are not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties.
 
 
 25
 Bowen, 487 U.S. at 905. In this case, as in Bowen, the Court of Federal Claims has no jurisdiction beyond award of a "naked money judgment." This case also features a complex ongoing relationship to decontaminate and decommission nuclear facilities. EPACT itself involves computations based on past use of Government enrichment services and ongoing obligations to share decommissioning expenses. In this complex ongoing relationship, this court, like the Supreme Court in Bowen, cannot be sure that a money judgment will adequately substitute for prospective relief. Prospective relief, such as sought in this case, lies beyond the powers of the Court of Federal Claims. In direct terms, claims for money damages before the Court of Federal Claims do not supply an "adequate remedy" for a claim for equitable relief in this complex case.
 
 
 26
 It is important to keep in mind that the question before us is not whether plaintiffs are entitled to the remedy they seek, but only whether the district court is empowered to give them a hearing. The dissent recognizes that the answer to that question lies in how we understand the Supreme Court's Bowen decision. Though the dissent attempts to distinguish Bowen on its facts, the facts are that, like Bowen, this case involves not a one-shot contract to be performed or not, but an ongoing legal and contractual relationship between the plaintiffs and the federal government with a complex of duties and responsibilities, one of which is challenged by the Government's insistence that payments are due on a basis different from that understood by the plaintiffs.
 
 
 27
 The dissent appreciates that the case turns on Bowen's holding that a suit in the Court of Federal Claims for money damages to recover past payments is not necessarily an "adequate remedy" under APA § 704 when a plaintiff seeks declaratory and injunctive relief against future assessments. The dissent makes its case for the opposite rule by quoting at length from Justice Scalia's dissent in Bowen, and asserting that "the logic promulgated by the dissent in Bowen is persuasive" (op. at 654) thus candidly acknowledging that the position the dissent here calls for is indeed one of dissent.
 
 
 28
 There are good arguments for the rule the dissenters prefer. Among others, it would reduce the potential for this kind of litigation over where to litigate, a consequence of our system of federal courts with divided and sometimes overlapping jurisdiction. Indeed, in the fullness of time it may well be that the rule announced by the Supreme Court in Bowen will prove so unworkable that the Court will choose to change it.[1] If so, we will have one less area of indeterminate jurisdictional line-drawing, and plaintiffs will be precluded from doing the kind of forum shopping they did here.
 
 
 29
 However, this court does not possess any special authority over the law governing this case, as it has in the intellectual property field, see Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997). We have been given no brief that entitles us to unilaterally declare the Supreme Court misinformed about its view of federal jurisdiction. Accordingly, this court is bound to follow, as best it can, the guidance given it by the majority in Bowen and not that of the dissent, and to recognize the difference.
 
 CONCLUSION
 
 30
 Because neither § 702's exclusion for money damages nor § 704's exception for alternative adequate remedies foreclose the APA's waiver of immunity in this case, the
 
 
 31
 district court correctly determined that it was authorized to proceed under the APA. The district court correctly denied the Government's motion to transfer to the Court of Federal Claims; the matter is returned to the trial court for continued proceedings.
 
 COSTS
 
 32
 Each party shall bear its own costs.
 
 
 33
 AFFIRMED.
 
 
 
 NOTES:
 
 
 *
 Judge Plager assumed senior status on November 30, 2000.
 
 
 [1]
 Two other Justices, Chief Justice Rehnquist and Justice Kennedy, joined Justice Scalia's dissent. Whether the change in the makeup of the Court since Bowen will, in the future, convert the dissent into a majority is a matter beyond speculation by lower court judges.
 
 
 
 34
 GAJARSA, Circuit Judge, dissenting.
 
 
 35
 I respectfully dissent from the majority opinion for two reasons. First, I believe that the majority's analysis is in direct conflict with Supreme Court precedent, precedent of this court, and the statutory scheme promulgated by Congress, which provides for judicial review pursuant to the Administrative Procedure Act only when no other adequate remedy is available. Second, the majority opinion allows the plaintiffs an opportunity to collaterally attack a clear and controlling precedent of this court and moreover it frustrates the legislative purpose of the Tucker Act.
 
 
 36
 Specifically, under the rubric of affording Con Ed an opportunity to seek equitable relief, the majority opinion countenances an end run around the Tucker Act by expanding the government's limited waiver of sovereign immunity far beyond its statutory constraints. The majority reaches its conclusion by linking a truism -- that the Court of Federal Claims ("CFC") cannot issue injunctions -- with a non sequitur -- that the CFC cannot otherwise provide Con Ed effective relief. The majority opinion condones the plaintiffs' forum shopping by permitting the twenty-two plaintiffs to avoid the jurisdiction of the CFC where they have submitted the same claims on overlapping and similar legal theories that have been rejected by this court in Yankee Atomic Electric Co. v. United States, 112 F.3d 1569 (Fed. Cir. 1997). The majority rationalizes the concept of forum shopping on the premise that "the federal code tolerates a variety of forum shopping." This case certainly does not present such an instance.
 
 
 37
 This circuitous journey begins with Congress' recognition in the late 1980's that the government's uranium facilities would have to be decontaminated and decommissioned. It was estimated that the total cost of the clean up would exceed $20 billion over a period of forty years. In response to the clean up requirement Congress enacted the Energy Policy Act of 1992 ("EPACT"). 42 U.S.C. §§ 2297(g) et seq. (1994 & Supp. 2000). The EPACT created the Uranium Enrichment Decontamination and Decommissioning Fund ("Fund"). The Fund accumulated monies by assessing a charge to domestic utility companies that purchased and used the enrichment services and from public funds to be appropriated by Congress. The EPACT also limited the collection of funds from the domestic utilities after the earlier of 15 years after October 24, 1992 or the collection of $2.25 billion (adjusted for inflation). See § 2297g-l(e). The EPACT imposed the special assessment on each domestic utility that had benefited from the government's enrichment services. It further provided that the domestic utilities could pass this cost through to the consumers by treating the special assessment as "a necessary and reasonable current cost of fuel, which shall be fully recoverable in rates in all jurisdictions in the same manner as the utility's other fuel cost." § 2297g-l(g).
 
 
 38
 The government has annually billed the domestic utilities since October, 1992 for their pro-rata share of the special assessment. After paying the special assessments, the domestic utilities challenged the assessment in the CFC, requesting a reimbursement of monies paid alleging that the special assessment breached their contracts with the federal government by retroactively increasing the cost of the uranium enrichment services and that it constituted an illegal exaction -- a taking in violation of the Takings Clause of the Fifth Amendment. The CFC, in one of the cases then pending, held that the special assessment was an illegal exaction under the Takings Clause and granted the plaintiff a money judgment. Yankee Atomic Electric Co. v. United States, 33 Fed. Cl. 580 (1995). On appeal, however, this court in Yankee Atomic Electric Co. v. United States, 112 F.3d 1569, reversed the CFC's finding that the Act was "a general exercise of Congress' taxing power for the purpose of addressing a societal problem rather than an act that retroactively increases the price charged to contracting parties for uranium enrichment services." Yankee Atomic, 112 F.3d at 1577. Basically, this court held that the special assessment did not breach any contract rights and Yankee Atomic had no property right that had been taken by the assessment.
 
 
 39
 The Supreme Court denied certiorari, Yankee Atomic Electric. Co. v. United States, 524 U.S. 951 (1998), whereupon the remaining plaintiffs, understanding their predicament, forged a new theory as a collateral attack against the Yankee Atomic legal roadblock and the EPACT. Having followed one avenue that they originally believed to be correct, but which proved to be futile, they now adopt similar and overlapping legal theories buttressed by their request of alternative remedies. They now seek a declaratory judgment and injunctive relief in the United States District Court for the Southern District of New York. This appeal is the positive result obtained by the plaintiffs in their forum shopping quest to obtain alternative relief on substantially the same legal premises. The utility companies, plaintiffs below, sought a declaratory judgment that the special assessment: (1) constitutes a taking of a vested property interest by their fixed price contracts with the federal government without just compensation under the Fifth Amendment (Takings) (Count I); (2) violates the Due Process Clause of the Fifth Amendment because the assessment is irrational and arbitrary, abrogates the plaintiffs' due process right to receive enrichment services at the contractually specified prices and unfairly imposed retroactive liability on the plaintiffs for continuation that the plaintiffs did not create (Count II); (3) violates the Due Process Clause in that it constitutes an illegal, irrational, unfair and disproportionate tax imposed on an exceedingly narrow base and "unlawfully impairs" their rights under the contracts and settlement agreements with the government (Count III); and (4) violates their fixed price contracts and Settlement agreement with the government for enrichment services by retroactively imposing additional costs based on the use of those services (Counts IV - VI).[1] The plaintiffs have not specifically requested monetary damages from the federal district court but have sought to enjoin the government from collecting additional monies under the special assessment provisions and to bar enforcement of these provisions. The issue before the court is whether the relief sought is akin to an action in damages. This action cannot be so camouflaged to be anything but an action for damages.[2]
 
 
 40
 The government argued that all of the CFC's actions arise out of the "same series of transactions, facts and circumstances" as the case filed at the federal district court and the case should not proceed simultaneously in both forums. The federal district court rejected the government's motion to stay the proceedings in favor of the CFC proceedings, holding that the plaintiffs could not obtain injunctive relief from the CFC so as to escape the continuing obligation to make payments into the Fund. Consolidated Edison Co. of N.Y. v. United States, 30 F.Supp.2d 385 (S.D.N.Y. 1998). The government then moved the court to transfer the plaintiffs' case to the CFC pursuant to 28 U.S.C. § 1631. The decision on interlocutory appeal before us is the federal district court's denial of that motion. Consolidated Edison Co. of N.Y. v. United States, 1999 WL 212686 (S.D.N.Y. Apr. 12, 1999).
 
 
 41
 The district court's holding denying the government's motion to transfer relied onIn re Chateaugay Corp., 53 F.3d 478 (2d Cir. 1995) and Eastern Enterprises v. Apfel, 524 U.S. 498 (1998), reasoning that where the challenge is solely for the taking of money (i.e., compelled payments) Congress could not have intended to relegate such a suit to the Tucker Act because the "just compensation" for such a taking is simply a "dollar for each dollar" taken.[3] The district court also rejected the government's position that the plaintiffs only sought money damages barred by Section 702 of the APA holding that the utilities only sought prospective relief. Furthermore, it concluded that under the "adequate remedy" provisions of Section 704 of the APA the CFC could not have jurisdiction over the plaintiffs' due process claims; moreover, the CFC could not grant equitable relief. The plaintiffs in the case before the district court alleged that they had paid six special assessments to the Fund totaling $569 million, but they did not make a demand for a refund of the payments as part of their prayer for relief.[4]
 
 
 42
 The majority opinion falls into the same open logic pit, which swallows the reasoning of the district court. First, it ignores the fact that the district court premised its jurisdictional argument on the basis that the CFC could not address the plaintiffs' due process claims. This is error. In fact, in the context of the so-called "illegal exaction" doctrine, enunciated most prominently in Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1009 (Ct. Cl. 1967), the CFC does have jurisdiction to consider due process claims. See Mallow v. United States, 161 Ct. Cl. 446 (1963). See also Commonwealth Edison, 46 Fed. Cl. at 42-43 (2000) (discussing additional cases). Second, instead of focusing on whether the CFC can provide the plaintiffs an adequate remedy, the majority opinion focuses on whether or not the CFC can enjoin the federal government from collecting any future payments from the plaintiffs. But this inquiry does not address the focal question posed by the APA, to wit, whether an adequate remedy is available in the CFC.
 
 
 43
 The plaintiffs' plain and underlying premise is to circumvent the binding precedent of this court established by Yankee Atomic. The majority states that "instead of seeking refunds of assessments paid," the plaintiffs have sought declaratory judgment that the EPACT is unconstitutional and seek an injunction on the enforcement of the special assessments. It concludes that the case "presents . . . [an] instance where the federal code tolerates a variety of forum shopping." However, the majority fails to recognize that it has opened a one-way forum shopping street. It allows a challenge by a plaintiff, who has failed to win before the Federal Circuit, to pursue an additional remedy by restructuring its complaint seeking declaratory judgment and injunctive relief. When the federal government fails before the Federal Circuit, it has no such remedy. For the government, this result constitutes a "tails you win, heads I lose" scenario in which the precedents of this court can be ignored by private litigants essentially at will. I do not believe that is what Congress intended.
 
 
 44
 Moreover, contrary to the majority's positing of the issue as one of whether the APA waived sovereign immunity for an action in the district court because the plaintiffs seek equitable relief, the real issue should be posed as whether or not the district court has subject matter jurisdiction to grant declaratory and injunctive relief to a party making a due process challenge to a government assessment, when the same party is concurrently suing the government in the CFC for a refund of money already paid? The question simply stated is whether the CFC can provide an adequate remedy; if so, this action is barred because the federal district court lacks jurisdiction. Despite the numerous cases littering the intersection of the Tucker Act and Section 704 of the APA, no clear answer has yet emerged. The majority opinion only adds to the cacophony.
 
 
 45
 The plaintiffs have cited 28 U.S.C. §§ 1331 and 1361 to show subject matter jurisdiction for their claim for equitable relief. However, federal question jurisdiction under 28 U.S.C. § 1331 does not by itself operate as a waiver of sovereign immunity. See Kester v. Campbell, 652 F.2d 13, 15 (9th Cir. 1981). The plaintiffs would need to identify an independent basis for the waiver of sovereign immunity to maintain their claim in the federal district court. The majority has found that waiver in Section 702 of the APA, 5 U.S.C. § 702. However, Section 702 is unavailing if there is an adequate remedy in a court that can provide appropriate relief.
 
 
 46
 In the instant case, given that plaintiffs have already paid some of the special assessments and have filed their claims for refunds in the CFC to recoup those payments, an adequate remedy exists for purposes of Section 704. A decision by the CFC would effectively moot any prospective relief that the district court could afford. There are two possible scenarios. One, if the CFC upholds the lawfulness of the special assessments, then no lawful exaction exists from which prospective relief could be provided. Second, if the CFC holds the special assessment unconstitutional, then its decision would be binding and it is absurd to believe that the DOE would continue to require the domestic utilities to make payment of unlawful exactions. Moreover, it is reasonable to presume that the CFC, pursuant to its authority under 28 U.S.C. § 1491(a)(2), can provide appropriate prospective relief. As was stated by Justice Scalia in dissent:
 
 
 47
 Respondent can assert immediately a claim for money damages in Claims Court, which if successful, will as effectively establish its right as would a declaratory judgment in district court. Since there is no allegation that the Secretary will not honor in the future a Claims Court judgment that would have not only precedential but collateral estoppel effect . . . the ability to bring an action in Claims Court with regard to disallowance decisions already made provides effective prospective relief as well.
 
 
 48
 Bowen v. Massachusetts, 487 U.S. 879, 926 (1988) (Scalia, J., dissenting).
 
 
 49
 By the plain language of its terms, Section 704 of the APA allows judicial review only when "there is no other adequate remedy in a court." Bennett v. Spear, 520 U.S. 154, 175 (1997). Section 704 provides that where agency action is otherwise reviewable in a court and an adequate remedy is available in conjunction with that review, the APA's waiver of sovereign immunity under Section 702 is not available. SeeKanemoto v. Reno, 41 F.3d 641, 644 (Fed. Cir. 1994); Mitchell v. United States, 930 F.2d 893, 895-96 (Fed. Cir. 1991).
 
 
 50
 The majority relies on Bowen v. Massachusetts, 487 U.S. 879, to establish the interplay of Section 702 and 704 and parallels the present case with Bowen; however,Bowen is clearly distinguishable on its facts and the majority's reliance on Bowen is misplaced. In Bowen, the Commonwealth of Massachusetts brought suit to reverse a federal agency's refusal to reimburse the state for certain categories of Medicaid expenditures. Bowen, 487 U.S. at 886-87. Pursuant to the Medicaid program, the federal government made quarterly advance payments to the state in anticipation of the future reimbursable costs of the state's program. When the state was notified by the Secretary of Health and Human Services ("HHS") that certain of its claimed expenditures had been disallowed, the state brought suit in the federal district court requesting declaratory and injunctive relief setting aside the Secretary's decision. The United States challenged the district court's jurisdiction to hear the case contending that the Tucker Act provided exclusive jurisdiction for the suit in the Court of Federal Claims (previously the U.S. Claims Court). Id. at 890.
 
 
 51
 The Supreme Court discussed the term "money damages" as used in the APA, 5 U.S.C. § 702:
 
 
 52
 The term "money damages," we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled. Thus, while in many instances an award of money is an award of damages, [o]ccasionally a money award is also a specie remedy. Courts frequently describe equitable actions for monetary relief under a contract in exactly those terms.
 
 
 53
 Bowen, 487 U.S. at 895 (citation omitted).
 
 
 54
 The Supreme Court further observed that "managing the relationships between the states and the federal government that occur over time and involve constantly shifting balance sheets requires a different sort of review and relief process." (emphasis added). Id. at 905 n.39. The Court further noted that relevant statute created "complex questions" with "an intricate ongoing relationship" between the federal government and the State raised in Medicaid disallowance decisions. Id. at 901 n.31. Flowing from these observations, the Supreme Court determined that the district court properly had jurisdiction because the case presented issues for which a district court "would be in a better position to evaluate than a single tribunal." The Court then determined that the case was not one in which "a naked money judgment against the United States will always be an adequate remedy." Id. at 905.
 
 
 55
 The facts in the present case are drastically different than those in Bowen. Here, no constantly shifting balance sheet or complex scheme exists; rather the amount that plaintiffs must pay is fixed and predetermined. Further, the only ongoing aspect of the EPACT is that money must be paid over a course of fifteen years instead of in one lump sum. Put differently, in the present case, unlike Bowen, the payment does not involve an amount that is dependent on constantly fluctuating multiple variables.
 
 
 56
 The majority also embraces the position that they are not determining whether or not the plaintiffs are entitled to the remedy they seek but only whether or not the district court has jurisdiction. However, in order to establish jurisdiction with the district court it had to determine first whether Section 702 waived sovereign immunity. It basically accepted the federal district court's interpretation of Bowen, holding that Section 702 waives immunity because the relief sought is equitable in nature. The Supreme Court, however, has instructed that the "Bowen analysis of § 702, . . . . did not turn on distinctions between 'equitable' actions and other actions," Dep't. of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). Specifically, the Supreme Court stated:
 
 
 57
 As Bowen recognized, the crucial question under § 702 is not whether a particular claim for relief is 'equitable' (a term found nowhere in § 702), but rather what Congress meant by 'other than money damages' (the precise terms of § 702). Bowen held that Congress employed this language to distinguish between specific relief and compensatory, or substitute, relief.
 
 
 58
 Id. at 261.
 
 
 59
 The Supreme Court further explained that in Bowen:
 
 
 60
 We held that the State's suit was not one 'seeking money in compensation for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it [was] a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money.'
 
 
 61
 Id. at 262.
 
 
 62
 Therefore, it is clear that the Bowen decision cannot be used as a predicate to grant jurisdiction to the federal district court in the case. It seems plain, that under theBowen analysis, the plaintiffs' claim is precisely the type of suit that is properly before the Court of Federal Claims rather than the district court, because a "complex scheme" of federal interaction has not been raised. That is, "the district court is not in any better position to understand and evaluate the claim than a single tribunal." The dispute does not involve an "intricate ongoing relationship" between the parties and there is no need for prospective relief because an adequate remedy is available -- money damages. As was stated by Justice Scalia in his dissent in Bowen: "If the jurisdictional division established by Congress [by § 702] is not to be reduced to an absurdity, the line between damages and specific relief must surely be drawn on the basis of the substance of the claim, and not its mere forum." Id. at 915. To put the answer bluntly, the plaintiffs are glorifying form over substance. We are allowing them to pursue another avenue to eventually obtain money damages from the federal government.
 
 
 63
 Moreover, the logic promulgated by the dissent in Bowen is persuasive. The majority surely could not have meant that the Tucker Act can be by-passed at will simply by rephrasing a complaint in declaratory judgment terms - something that could occur in virtually every case exactly as the parties did in this case. Many cases decided since Bowen have limited it basically to its facts; however, it has created and continues to generate much mischief. It is time that the Supreme Court apply the coup de grace to Bowen; otherwise courts will continue to be confused, like the majority in this case, and place many cases outside the jurisdiction of the CFC.
 
 
 64
 I would hold that the district court lacks jurisdiction under Section 702 because the CFC can provide an adequate remedy for purposes of Section 704.
 
 
 
 NOTES:
 
 
 [1]
 These allegations are the same as the plaintiffs' amended complaint filed in the CFC in the parallel cases. See Commonwealth Edison Co. v. United States, 46 Fed. Cl. 29, 35 (2000), appeal pending .
 
 
 [2]
 If it quacks like a duck, waddles like a duck, struts like a duck, it must be a duck.
 
 
 [3]
 It should be noted that the majority at least has not pursued the same legal reasoning as the federal district court. It has not premised its conclusions on either Chateaugay or Eastern Enterprises, recognizing perhaps the limitations of those decisions in establishing the legal support for their conclusions since in both of those cases no monies were paid to the respective funds prior to the declaratory and injunctive relief actions being filed.
 
 
 [4]
 Does this failure imply that the plaintiffs have forsaken the recovery of past payments, namely the $569 million previously paid, or will they continue to pursue the past amounts if they obtain a favorable interpretation of the EPACT before the Southern District and the Second Circuit? Will the CFC be bound by that ruling or by our Yankee Atomic decision in their continuing challenge?